# UNITED STATES *v.* EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES.

No. 645.   Argued April 21, 1966.—Decided June 6, 1966.

*Robert S. Rifkind* argued the cause for the United States. With him on the brief were *Solicitor General Marshall, Acting Assistant Attorney General Roberts, Joseph Kovner* and *Richard J. Heiman.*

*Frank W. Hoak* argued the cause for respondent. With him on the brief was *Donald B. Jones.*

MR. JUSTICE CLARK delivered the opinion of the Court.

This writ involves the recurring problem of priority contests between a state lien and a federal tax lien under §§ 6321 and 6322 of the Internal Revenue Code of 1954, 26 U. S. C. §§ 6321, 6322 (1964 ed.). Since 1950— *United States* v. *Security Trust & Savings Bank,* 340 U. S. 47—we have passed upon more than a dozen cases involving some facet of the problem. In the present case the law of New Jersey provides for the allowance in a foreclosure action of an attorney's fee fixed by statute as a certain percentage of the amount adjudged to be paid the mortgagee and taxed as costs in the action. The question presented is whether a federal tax lien is entitled to priority over the mortgagee's claim for such an attorney's fee, where notice of the tax lien is recorded prior to default by the mortgagor. The state trial court held that the federal tax lien was superior, New Jersey's highest court reversed, 45 N. J. 206, 212 A. 2d 25, and we granted certiorari, 382 U. S. 972. Only three Terms ago, MR. JUSTICE WHITE writing for the Court, disposed of an almost identical question, *i. e.,* whether "a reasonable attorney's fee" provided for in a mortgage note "in the event of default . . . and of the placing of this note in the hands of an attorney for collection, or this note is collected through any court proceedings" created a lien

superior to that of a federal tax lien recorded after suit on the note was filed but prior to the actual fixing of the amount of the attorney's fees. *United States* v. *Pioneer American Insurance Co.*, 374 U. S. 84 (1963). We there held the federal lien superior. We hold similarly here, and reverse.

## I.

Albert Bagin and his wife executed to Equitable Life a first mortgage on certain real property in New Jersey. This mortgage, which secured an indebtedness of $30,000, was recorded on December 19, 1960. The Bagins executed two other mortgages covering the property—a second mortgage which was also recorded on December 19, 1960, and a third, recorded on May 18, 1961. On March 21, 1962, the United States filed a tax lien for $7,748.91 against Mr. Bagin. This lien, which was for unpaid withholding taxes, arose under 26 U. S. C. §§ 6321, 6322, and was recorded in accordance with 26 U. S. C. § 6323 (1964 ed.).[1] Somewhat less than a year later, the Bagins

---

[1] These provisions state:

26 U. S. C. § 6321. LIEN FOR TAXES.

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

26 U. S. C. § 6322. PERIOD OF LIEN.

"Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed is satisfied or becomes unenforceable by reason of lapse of time."

26 U. S. C. § 6323. VALIDITY AGAINST MORTGAGEES, PLEDGEES, PURCHASERS, AND JUDGMENT CREDITORS.

"(a) Invalidity of lien without notice.

"Except as otherwise provided in subsections (c) and (d), the lien imposed by section 6321 shall not be valid as against any mortgagee,

defaulted on the first mortgage and Equitable Life brought this foreclosure action. Equitable claimed the principal and interest due under the mortgage, as well as an attorney's fee as authorized by New Jersey statute.[2] The second mortgagee admitted the superiority of Equitable Life's priority and demanded that the second mortgage be reported upon. Both the Bagins and the

---

pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary or his delegate—

"(1) Under State or Territorial laws.

"In the office designated by the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law designated an office within the State or Territory for the filing of such notice; or

"(2) With clerk of district court.

"In the office of the clerk of the United States district court for the judicial district in which the property subject to the lien is situated, whenever the State or Territory has not by law designated an office within the State or Territory for the filing of such notice; . . .

.            .            .            .            .

"(b) Form of notice.

"If the notice filed pursuant to subsection (a)(1) is in such form as would be valid if filed with the clerk of the United States district court pursuant to subsection (a)(2), such notice shall be valid notwithstanding any law of the State or Territory regarding the form or content of a notice of lien."

.            .            .            .            .

[2] Rules Governing the New Jersey Courts (1965 ed.):

"4:55-7. Counsel Fees

"No fee for legal services shall be allowed in the taxed costs or otherwise, except:

.            .            .            .            .

"(c) In an action for the foreclosure of a mortgage. The allowance shall be calculated as follows: on all sums adjudged to be paid the plaintiff in such an action, amounting to $5,000 or less, at the rate of 3%, provided, however, that in any action a minimum fee of $75 shall be allowed; upon the excess over $5,000 and up to $10,000 at the rate of $1\frac{1}{2}\%$; and upon the excess over $10,000 at the rate of 1%."

third mortgagees suffered default and their interests are not before us. The United States conceded the priority of the claims under the first two mortgages exclusive, however, of the attorney's fee, which it contended was inferior to the federal lien. The trial court rendered summary judgment fixing the sums due the respective parties and, viewing the priority question controlled by *United States* v. *Pioneer American Insurance Co., supra,* subordinated the claim for attorney's fee to the federal tax lien. Without awaiting a sale of the property, respondent appealed to the Superior Court, Appellate Division, which certified the appeal to the Supreme Court of New Jersey. The Supreme Court ordered the property sold, and, after the sale, held that the statutory attorney's fee was superior to the federal lien.

## II.

In *United States* v. *New Britain,* 347 U. S. 81 (1954), a leading case in this field, we held that where a debtor is insolvent the "Congress has protected the federal revenues by imposing an absolute priority" of the federal lien by virtue of § 3466 of the Revised Statutes (1874), now 31 U. S. C. § 191 (1964 ed.), and that where the debtor is solvent the "United States is free to pursue the whole of the debtor's property wherever situated" under 26 U. S. C. §§ 6321, 6322. *Id.,* at 85. The record here is silent on the solvency of the debtors, but as the priority issue below centered on §§ 6321–6323 we may safely assume they are solvent. As against a recorded federal tax lien, the relative priority of a state lien is determined by the rule "first in time is first in right," which in turn hinges upon whether, on the date the federal lien was recorded, the state lien was "specific and perfected." A state lien is specific and perfected when "there is nothing more to be done . . . —when the identity of the lienor, the property subject to the lien,

and the amount of the lien are established." Thus, the priority of each statutory lien . . . must depend on the time it attached to the property in question and became choate." *United States* v. *New Britain, supra.* These determinations are of course federal questions. *United States* v. *Waddill Co.,* 323 U. S. 353, 356–357 (1945).

*Pioneer American, supra,* dealt with these identical problems and we therefore turn to its teachings. There, "the claim for the attorney's fee . . . became enforceable under Arkansas law as a contract of indemnity at the time of default . . . before the filing of the first federal tax liens." The suit in which the attorney's fee was earned was filed prior to the recording of the federal liens. "Nevertheless, because this fee had not been incurred and paid and could not be finally fixed in amount until . . . after all the federal liens had been filed," we held that the fees were "inchoate at least until that date and that the federal tax liens are entitled to priority." 374 U. S., at 87. As we said there, the attorney's fee was "undetermined and indefinite" at the time the federal lien was recorded; nor had the fee been "reduced to a liquidated amount." Moreover, there was no "showing in this record that the mortgagee had become obligated to pay and had paid any sum of money for services performed prior to the filing of the federal tax lien." Thus, the mortgagee's claim was not only "uncertain in amount" but "yet to be incurred and paid." *Id.,* at 90–91.

Equitable's lien is even more clearly inchoate. At the time the federal lien was recorded Equitable's mortgage was not even in default—no reference whatever had been made to attorneys, no suit had been filed, nor had any sums been "adjudged to be paid." New Jersey's Rule 4:55–7 (c), *supra,* n. 2, which fixes the lien had not even been invoked much less applied to establish the amount of the lien. The claim was wholly contingent

at the time the federal lien matured. Cast against the setting of *Pioneer American,* the inchoate character of the state-created lien here stands out even more starkly.

New Jersey's Supreme Court relied on the preciseness—the fixed percentages—of Rule 4:55–7 (c), and applied the principle of *Security Mortgage Co.* v. *Powers,* 278 U. S. 149 (1928). It found *Pioneer American* inapposite. We cannot agree. *Security* did not involve a federal tax lien but raised "federal questions peculiar to the law of bankruptcy." 278 U. S., at 154. Our opinion in *Pioneer American* specifically pointed out that *Security* had no application to federal tax lien cases because the issue there was the status of an attorney's fee clause in a *bankruptcy* proceeding "where the rigorous federal lien choateness test was not necessarily applicable." 374 U. S., at 90, n. 8. We likewise find that *Security* has no bearing on the issue presently before us. As we noted earlier, at the time the federal lien matured here no sum of money due on the mortgage had been "adjudged." Adjudication alone triggers the mathematical machinery of Rule 4:55–7 (c) whereby liability for the attorney's fee is fixed. No liability having been incurred there could of course be no lien in existence at the time the federal lien matured. In short, the fixed fee of the statute had not been brought into play.

## III.

Equitable Life's remaining contentions are also untenable. It argues that, since the United States concedes the priority of the mortgages here, the attorney's fee is likewise superior, for it must stand on no less equal footing as principal and interest under a mortgage—neither of which is ascertainable until foreclosure. This identical contention was raised and implicitly rejected in *Pioneer American.* There is nothing in the legislative

history of § 6323 indicating that in protecting mortgagees from secret, government tax liens, Congress intended to include all ancillary interests which a State may afford its mortgagees. See H. R. Rep. No. 1018, 62d Cong., 2d Sess. (1912). See also H. R. Rep. No. 1337, 83d Cong., 2d Sess. (1954); S. Rep. No. 1622, 83d Cong., 2d Sess. (1954).

Nor does the fact that New Jersey's statutory scheme taxes the attorney's fee as costs in the foreclosure proceeding affect the standing of a competing federal lien. To repeat, the relative priority of a United States lien for unpaid taxes is a federal question. *United States* v. *Acri,* 348 U. S. 211, 213 (1955). The label given the attorney's fee by the State does not bind this Court. As we said in *United States* v. *Buffalo Savings Bank,* 371 U. S. 228, 229 (1963), "the state may not avoid the priority rules of the federal tax lien by the formalistic device of characterizing subsequently accruing local liens as expenses of sale." Likewise in *Pioneer American,* the State was not permitted to upgrade its lien by the formalistic device of "indemnity." Even where authorized by state statute [3] the distinction between costs and allowances for attorneys' fees is well recognized. In *Sioux County* v. *National Surety Co.,* 276 U. S. 238 (1928), the Court specifically noted this distinction in highly cogent terms: "That the statute directs the allowance [for an attorney's fee] . . . to be added to the judgment as costs are added does not make it costs in the ordinary sense of the traditional, arbitrary and small fees of court officers,

---

[3] Besides New Jersey, only three States provide explicitly for an allowance, as costs, for attorneys' fees in foreclosure actions. Iowa Code Ann. § 625.22; Mont. Rev. Codes Ann. § 93–8613; Okla. Stat. Ann. Tit. 46, § 56. Several others provide for the enforcement of contractually created claims for attorneys' fees in such actions, as in *Pioneer American.* See, *e. g.,* Conn. Gen. Stat. Rev. § 49–7; Vt. Stat. Ann. Tit. 12, § 4527.

attorneys' docket fees and the like . . . ." At 243-244.[4]
Moreover, the mortgagee by foreclosing does not produce
a fund from which the United States benefits, without
expenditure on its part. A foreclosure is more akin to
a liquidation of assets than to the creation, enhancement
or protection of a common fund from which equity per-
mits reimbursement of costs of litigation.[5] Finally, it
would be contrary to the federal policy of uniformity in
the federal tax laws to permit the relative priority of fed-
eral tax liens to "be determined by the diverse rules of the
various States." *United States* v. *Speers,* 382 U. S. 266,
270 (1965). See also *United States* v. *Gilbert Associates,*
345 U. S. 361, 364 (1953). While we believe that the
established practice of awarding costs in the ordinary
sense fairly renders those items an incident of the rights
of those protected under § 6323, we see no warrant either
in the intent of § 6323 or the practices prevailing among
the States at the time of its enactment to treat attorneys'
fees as a right entitled to priority over a federal tax lien.

---

[4] Indeed, the Supreme Court of New Jersey has itself recognized
this same distinction. In *United States Pipe & Foundry Co.* v.
*United Steelworkers of America,* 37 N. J. 343, 355-356, 181 A. 2d
353, 359 (1962), that court stated that costs generally "comprise
principally certain statutory allowances, amounts paid the clerk in
fees, and various other specified disbursements of counsel includ-
ing sheriff's fees, witness fees, deposition expenses and printing
costs. . . . *Counsel fees, although if allowable are included in the
taxed costs, are an entirely different matter.*" (Emphasis added.)

[5] In the latter case, courts proceeding under statutory or inher-
ent equitable powers have traditionally awarded attorneys' fees.
*Trustees* v. *Greenough,* 105 U. S. 527 (1882); *Sprague* v. *Ticonic
Bank,* 307 U. S. 161 (1939). See McCormick, Damages § 62 (1935).
In *Pioneer American,* we stated: "The attorney's services . . . were
rendered for the benefit of the mortgagee to protect his interest in
the property, and the United States, holding an adverse interest,
received no such benefit from them that its interest is to be charged
therefor." 374 U. S., at 92, n. 13.

We hold that the federal tax lien is entitled to priority over the claim for the attorney's fee under Rule 4:55–7 (c). We intimate no view as to the disposition the state court may wish to make of the fund set aside for the principal, interest, and costs, exclusive of attorney's fee. That is a matter of state law. *United States* v. *New Britain, supra,* at 88.

*Reversed and remanded.*

MR. JUSTICE DOUGLAS dissents.