JOSEPH R. PIONTEK AND DIANA L. PIONTEK, HIS WIFE, AND PINECONE MEADOW, INC., PLAINTIFFS, v. ARMAND CERI-TANO, SOMERS K. STEELMAN, INTERNAL REVENUE SER-VICE, FEDERAL DEPOSIT INSURANCE CORPORATION AND TANNENBAUM & MILASK, INC., DEFENDANTS, FIDELITY BANK, DEFENDANT–RESPONDENT, UNITED STATES OF AMERICA, APPELLANT, ROBERT J. SEAMAN, LAWRENCE M. VECCHIO, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued January 27, 1981—Decided February 13, 1981.

Before Judges MICHELS, KOLE and ARD.

*Joan I. Oppenheimer,* Trial Attorney, Tax Division, United States Department of Justice, argued the cause for appellant, United States of America (*M. Carr Ferguson,* Assistant Attorney General, and *Gilbert E. Andrews* and *William S. Estabrook,* Tax Division, Department of Justice, attorneys; *Robert J. Del-Tufo,* United States Attorney, of counsel).

*William F. Hyland, Jr.* argued the cause for respondent Fidelity Bank (*Brandt, Haughey, Penberthy, Lewis & Hyland,* attorneys).

*Lawrence M. Vecchio,* respondent, argued the cause *pro se.*

*Robert J. Seaman,* respondent, filed a *pro se* brief.

The opinion of the court was delivered by

KOLE, J. A. D.

The factual summary that follows suffices for the purpose of this opinion.

In August 1974 plaintiffs (hereafter, the Pionteks) purchased a tavern from defendants Ceritano and Steelman. The purchase price of $250,000 included a $102,397 promissory note of the Pionteks in favor of these defendants. At some point after the purchase of the tavern the Pionteks decided that the sellers had made fraudulent misrepresentations in connection with the sale and that there should be a set-off on the amount due on the note. Accordingly, they began depositing the money due and payable on the note in escrow with an attorney, Seaman. One of the sellers, Ceritano, was the subject of an Internal Revenue Service (hereafter, the Government or the IRS) assessment against him of in excess of $77,000, plus penalties, by reason of his failure to pay certain federal taxes beginning in 1963. In March, May and August 1964 and February 1965 the IRS made assessments in that amount by mailing notices and demands for payment to him. When payment was not forthcoming, in October 1975 the IRS served notices of levy on the Pionteks and Seaman who, as indicated, was holding part of the proceeds due under the note in escrow.[1] The IRS did not file any notice of lien as to these assessments.

In September 1977 the Pionteks, through their attorney Vecchio, instituted the present action against, among others, Ceritano, Steelman, IRS and Fidelity Bank (hereafter Fidelity). Fidelity was made a defendant by reason of its having obtained a judgment against Ceritano in May 1977 for approximately $606,995. Since that judgment was not paid, in June 1977 Fidelity served notice of levy upon the Pionteks with respect to Ceritano's rights in the note. In addition to seeking in this action a set-off against the amount due on the note against Ceritano and Steelman, the complaint sought an adjudication of the rights of the other parties we have named in the proceeds of the note or

---

[1] The amount so assessed, including "statutory additions," and for which notices of levy were served, was $111,280.80. The Government was also admittedly due in excess of $25,000 for taxes assessed in 1973 for which a notice of lien had been filed.

the amount due on the note. After trial of the set-off issue, the trial judge determined that the Pionteks were entitled to a set-off on the note of $17,575.34 and determined the total amount due on the note. It required that the Pionteks deposit with Seaman, the escrow agent, an amount which, together with that which he already held in escrow, would aggregate the sum due and owing on the note. The escrowed money was to be subject to distribution by later order after the court determined the rights thereto of the various parties. It appears that the total amount so to be distributed was about $135,000. From that amount the court ordered attorneys' fees of $3,972.75 to be paid to Vecchio, who instituted the action for the Pionteks, and $1,234.59 to Seaman, such fees to be paid before any other distribution was made. The court further determined that Ceritano owned a 90%, and Steelman owned a 10%, interest in the note and that the balance found to be due Ceritano on the note, apart from other claims not here relevant, was to be distributed to Fidelity since it was held to have priority over the Government's rights claimed by virtue of the Government's levy. It appears that some $75,000 of the note proceeds were thus to be paid to Fidelity and that there was no balance of the proceeds remaining to pay any part of the claim asserted by the Government.

The trial judge held that since the Government had not filed a notice of its lien and Fidelity had a judgment lien against the note obligation or its proceeds (hereafter both sometimes referred to as "the note"), Fidelity had priority under 26 *U.S.C.A.* § 6323(a), and the mere levy by the Government on the taxpayer's rights in the note did not suffice to give the Government a prior lien. He further held that under the contract of sale between the Pionteks and the sellers, Ceritano and Steelman, the sellers had agreed to indemnify and hold the Pionteks harmless against loss, damages and liability resulting from certain breaches of the sales contract provisions as set forth therein, and that since the sellers had committed such breaches, the attorneys' fees were attributable to problems resulting

therefrom. These fees, the judge determined, were entitled to be paid before the amount due the sellers—both Ceritano and Steelman—and to each of them was ascertained. The Government appeals from these rulings.

On this appeal the Government claims that (1) the judge erred in holding that the Government's levy on the note was not sufficient to give it a prior lien over Fidelity's claimed judgment lien, and (2) the judge erred in determining that the award of fees to the attorneys Seaman and Vecchio had priority over the federal tax lien. We reverse and hold that the Government's tax lien had priority over both Fidelity's asserted judgment lien and the attorneys' fees awarded Vecchio and Seaman.

## I

### *The Government's Priority Over Fidelity*

■ By virtue of 26 *U.S.C.A.* § 6321 the amount of any tax which a person liable therefor fails to pay after assessment and demand "shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to [the taxpayer]." This tax lien is valid against all persons except, among others, a judgment lien creditor until notice thereof meeting the requirements of 26 *U.S.C.A.* § 6323(f) has been filed by the Government. 26 *U.S.C.A.* § 6323(a). It is conceded that no such notice of lien was ever filed by the Government as to the assessments here involved.

Instead, the Government claims its priority right over Fidelity's asserted judgment lien by virtue of 26 *U.S.C.A.* § 6331(a), which provides that it may collect the tax "by levy upon all property and rights to property . . . belonging to [the taxpayer] or on which there is a lien provided in this chapter" (including 26 *U.S.C.A.* § 6321) for the payment of such tax. The term "levy" is defined by § 6331(b) to include the power of distraint and seizure by any means and as extending "only to property possessed and obligations existing at the time" of the levy. It is further provided in § 6331(b) that in any case in which a levy is

made, the Government "may seize and sell such property or rights to property (whether real or personal, tangible or intangible.)" [2]

By virtue of its levy on the note the Government seized the debt due thereon and obtained constructive possession and the full right to the proceeds thereof for the purpose of collecting the amount of the tax assessments against Ceritano at the time the levy was made in 1975. *See Phelps v. United States*, 421 *U.S.* 330, 95 *S.Ct.* 1728, 44 *L.Ed.2d* 201 (1975) (hereafter *Phelps*). The fact that the Pionteks disputed the amount due on the note and made no payment in response to the Government's levy merely diminished the Government's rights acquired by that levy to the extent that it was later determined that, by reason of the set-off, a lesser amount was due on the note than otherwise appeared. The provisions of § 6331 to the effect that the levy shall extend only to "obligations existing at the time thereof" does not mean that the Pionteks' obligation on the note was not in existence at the time of the levy. That obligation existed since the liability of the obligor, the Pionteks, was fixed and determinable. 26 *C.F.R.* 301.6331–1(a)(1). Indeed, had the Pionteks surrendered or caused to be surrendered the amount due on the note, including the monies paid thereon but held in escrow, to the Government when the levy occurred, their obligation to the delinquent taxpayer, Ceritano, with respect thereto would have been extinguished and nothing would have been left to satisfy any subsequent judgment lien asserted against the note. 26 *U.S.C.A.* § 6332(d); *Phelps, supra* at 335, 95 *S.Ct.* at 1731. Hence, Pionteks' liability on the note was fixed and determinable when the Government's levy was made; only the amount due thereon had to be determined and that determination was later made by the trial judge.

---

[2]Except where otherwise indicated, we refer herein to the various sections of 26 *U.S.C.A.* merely by section number—*e. g.*, §§ 6321, 6323(a).

It is of no consequence in the circumstances of this case that in *Phelps,* the Government filed a notice of tax lien on the same day that it served a notice of levy on the intangible property there involved. The significance of *Phelps* here is the full sweep given the Government's rights by the court when it exercises its method of collecting a tax by levy on such property instead of the alternative method of enforcing a lien and, in so doing, filing a notice of lien. As applied to the situation before us, the levy gave the Government full legal right to the obligation due on the note to satisfy the taxes lawfully owing to it as against a judgment creditor such as Fidelity, whose lien could not arise until it actually levied thereafter on that asset. *See Continental Fin., Inc. v. Cambridge Lee Metal,* 100 *N.J.Super.* 327, 340 (Law Div.1968), aff'd 105 *N.J.Super.* 406 (App.Div.1969), aff'd 56 *N.J.* 148 (1970); *In re Hiawatha Do It Yourself, Inc.,* 82 *N.J.Super.* 399, 404 (Cty.Ct.1964); *Matter of Blease,* 605 *F.2d* 97, 98, n. 2 (3 Cir. 1979); *Fore v. United States,* 339 *F.2d* 70 (5 Cir. 1964), *cert.* den. 381 *U.S.* 912, 85 *S.Ct.* 1532, 14 *L.Ed.2d* 433 (1965). This is particularly so where, as here, it appears that the amount of taxes involved in the Government's 1975 levy was such that any amount due on the note from the Pionteks to Ceritano at the time of the Fidelity levy in 1977 was not sufficient to satisfy even Ceritano's tax liability by virtue of the Government's levy. See note 1, *supra.*

The Government's levy in 1975 was effective to give it a right to the proceeds of the note due to the taxpayer Ceritano sufficient to satisfy its tax assessments for which the levy was made. Thereafter, the Pionteks and Seaman possessed no property to which Fidelity's judgment lien could attach. Thus, the Government's right was superior to any claim by Fidelity as a judgment lien creditor by virtue of its 1977 levy, even though the Government had not filed a notice of lien.

The determination we have reached is supported, in addition to *Phelps, supra,* by the following: *American Acceptance Corp. v. Glendora Better Builders,* 550 *F.2d* 1220 (9 Cir. 1977); *United States v. Eiland,* 223 *F.2d* 118, 122–123 (4 Cir. 1955); *United*

States v. Sands, 174 *F.2d* 384, 385–386 (2 Cir. 1949); *First Nat'l Bank of Norfolk v. Norfolk West Ry. Co.*, 327 *F.Supp.* 196, 198–199 (E.D.Va.1971). *See, also, United States v. Weintraub*, 613 *F.2d* 612, 621–623 (6 Cir. 1979), *cert.* den. 447 *U.S.* 905, 100 *S.Ct.* 2987, 64 *L.Ed.2d* 854 (1980); *Magavern v. United States*, 550 *F.2d* 797 (2 Cir. 1977), *cert.* den. 434 *U.S.* 826, 98 *S.Ct.* 74, 54 *L.Ed.2d* 84 (1977); *United States v. Sterling Nat. Bank & Trust Co.*, 494 *F.2d* 919, 922–923 (2 Cir. 1974); *United States v. Mitchell*, 349 *F.2d* 94, 99 (5 Cir. 1965); *Matter of Chantler Baking Co.*, 436 *F.Supp.* 169, 173–174 (W.D.Pa.1977); *United States v. Cuti*, 395 *F.Supp.* 1064, 1066 (E.D.N.Y.1975).

To the extent that the opinions relied on by the trial judge and Fidelity—*e. g., United States v. Jenison*, 484 *F.Supp.* 747 (D.R.I.1980); *Hoover, Inc. v. McCullough Industries, Inc.*, 351 *F.Supp.* 1023 (S.D.Ala.1972)—are contrary to our determination herein, we have concluded that they should not be followed in the present case.

We hold, therefore, that the trial judge erred in determining that Fidelity's right to the proceeds of the note was superior to that of the Government. The provision of the order to that effect is reversed; the order shall provide that the Government's lien thereon is prior to any claim asserted by Fidelity.

## II

### *The Government's Priority Over Attorneys' Fees*

■ The trial judge allowed attorneys' fees to the escrow agent and the attorney who instituted this action because the agreement of sale required the seller to indemnify the buyer against any and all losses, damages and expenses resulting from certain breaches of the agreement, including legal fees incurred by the buyer in asserting a claim therefor. He stated that their services were "absolutely necessary and essential . . . in protecting and asserting the rights" of the Pionteks in this matter. He thus held that enforcement of this contract required the award of attorneys' fees. *See Cohen v. Fair Lawn Dairies, Inc.*, 86 *N.J.Super.* 206, 214–215 (App.Div.1965), aff'd 44 *N.J.* 450 (1965).

A persuasive argument may be advanced in favor of the judge's ruling, for the amount of the taxpayer's property subject to the Government's levy—the debt due the taxpayer from the Pionteks—conceivably might be deemed reduced by the fees required to be paid under the indemnity provisions of the contract to the escrow agent and to the attorney who instituted this action.

However, we have concluded that to give such attorneys' fees a priority as against the Government where, as here, the amount thereof is not determined until after the Government's lien on the property involved has arisen, would contravene the rulings of the United States Supreme Court. *United States v. Pioneer American Ins. Co.*, 374 *U.S.* 84, 83 *S.Ct.* 1651, 10 *L.Ed.2d* 770 (1963). *See, also, United States v. Equitable Life Assurance Society*, 384 *U.S.* 323, 86 *S.Ct.* 1561, 16 *L.Ed.2d* 593 (1966); *United States v. Fidelity Phila. Trust Co.*, 459 *F.2d* 771 (3 Cir. 1972). Indeed, a somewhat similar argument to that advanced above was rejected in the *Pioneer* case, *supra*, 374 *U.S.* at 92, 83 *S.Ct.* at 1657.

We view those rulings of the Supreme Court as applying even where, as in this case, the Government has not filed a notice of lien under § 6323(f). It nevertheless had a viable lien on the note and its proceeds by virtue of § 6321. That lien was prior to such attorneys' fees, which did not become choate until the amount thereof was thereafter fixed and determined by the court below.

The tax liens arose in 1964 and 1965 when the IRS assessed Ceritano for tax deficiencies. The IRS also served notices of levy in 1975. The attorneys' claims, on the other hand, did not become fixed and definite until 1980, when the trial judge entered an order awarding counsel fees of $3,972.75 to Vecchio and $1,234.59 to Scaman.

We are satisfied that the right to such fees is not affected by the 1966 amendments to § 6323, which affords a "super-priority" to certain attorney's fees even as against a notice of lien filed by

the Government. § 6323(b)(8). Assuming *Adco Service, Inc. v. Graphic Color Plate*, 137 *N.J.Super.* 39 (Law Div.1975), was properly decided, it is not applicable here. Neither attorney's services resulted in creating the fund against which the Government's lien attached or from which the Government would receive payment of its assessed taxes.

We note that as escrow agent Seaman was not entitled to an attorney's fee from a fund impressed with a federal tax lien where, as here, the fund is insufficient to satisfy the Government's lien. *See United States v. State Nat'l Bank of Conn.*, 421 *F.*2d 519 (2 Cir. 1970).

Accordingly, the award of attorneys' fees from the proceeds of the note prior to disbursement to the Government in satisfaction of its lien was in error. That part of the order must likewise be reversed.

Reversed with directions to enter an order granting the Government a right to the amount due Ceritano on the note prior to any claim of Fidelity or fees of Vecchio and Seaman.