**EASTSIDE MRI, Plaintiff,**

v.

**Linda JAENSON, et al., Defendants.**

**No. 1:88CV0910.**

United States District Court, N.D. Ohio, E.D.

Jan. 29, 1993.

Richard John Ambrose, Bernard Karr, McDonald, Hopkins, Burke & Haber, Cleveland, OH, for plaintiff.

Frank R. DeSantis, Kaufman & Cumberland, Cleveland, OH, Henry J. Riordan, Dept. of Justice Tax Div., Washington, DC, Alexander A. Rokakis, Office of U.S. Atty., Cleveland, OH, defendants.

Janice Evans, pro se.

### ORDER

LAURIE, United States Magistrate Judge.

## I. INTRODUCTION

This case was initially referred to this Magistrate Judge from the docket of the Honorable George W. White on January 29, 1992, for pretrial supervision. The parties to this suit consented to the exercise of this Magistrate Judge's jurisdiction, and the order implementing that consent was filed by District Judge White on September 9, 1992. As of that date, cross-motions for summary judgment were pending, one filed by the United States and one filed by Linda Jaen-

son, both of whom are defendants in this interpleader action.

Although this Magistrate Judge had hoped that the parties would be able to resolve this matter among themselves by settlement, the parties' joint status report, filed October 15, 1992, indicates that such apparently is not possible. As a result, this Magistrate Judge has reviewed the filings in this case and the applicable law. This Magistrate Judge hereby grants the United States' motion for summary judgment, and denies the motion for summary judgment filed by defendant Jaenson.

## II. HISTORY

### A. Statement of Facts

On October 21, 1985, Linda Jaenson filed a Complaint for divorce in the Lake County Court of Common Pleas, Domestic Relations Division, Case Number 85–DR–1139, against her husband, Iraj Derakhshan.[1] Cross Motion at 2. Although that document is not before this court, it is apparent from the other documents filed here that Jaenson sought among other things the award of some funds in her domestic relations action, and has experienced great difficulties in obtaining the monies eventually awarded to her. On September 12, 1986, the judge in that case filed an order, releasing funds held by the court to an escrow agent, and ordering any monies coming to Derakhshan to be turned over to the escrow agent, who would be "bound strictly by the orders of the Court." Exhibit A to Cross Motion. The judge did not in that order specify what persons would eventually be entitled to those funds.

The Domestic Relations Court filed three orders on December 19, 1986, relating to

---

1. Derakhshan has a number of legal problems. According to orders of the Domestic Relations Court, he apparently kidnapped his two children, necessitating his ex-wife's travelling and going to great expense to reclaim them. *See* Exhibit C to Defendant Linda Jaenson's Objection to the Summary Judgment Motion of the United States of America and Cross Motion for Summary Judgment (hereinafter "Cross Motion"), filed October 19, 1990. It appears he has also failed to pay his

income taxes for a number of years. *See* Exhibit 2 to United States' Supplement to Motion for Summary Judgment (hereinafter "Supplement"), filed September 13, 1990. Currently, Derakhshan is a fugitive from justice, whose last known location was somewhere in British Columbia, Canada. *See* Richard J. Ambrose's affidavit at 2, Exhibit A to Plaintiff's Motion for Extension of Time to Serve Defendant, filed June 10, 1988.

interim distributions of assets in the divorce case. The first order delineated marital real property to be turned over to escrow agent Evans. Exhibit B to Cross Motion. The second order awarded Jaenson certain sums of money from Derakhshan, for her costs and expenditures in tracing and retrieving their children, whom Derakhshan apparently had kidnapped. The order also directed Evans to disburse funds from specified Ameritrust accounts to Jaenson, to cash negotiable instruments *presently* restrained in the name of Derakhshan, *to obtain* funds held by E.F. Hutton in the name of Derakhshan, and to disburse all such funds to pay Derakhshan's support obligations. Exhibit C to Cross Motion. The third order filed on December 19, 1986, directed Evans to open Derakhshan's mail, to retain funds located therein, and to distribute other mail items as specified in the order. In this order, the court noted the competing claims of Derakhshan's patients to some of his funds. Exhibit D to Cross Motion. This order did not direct the escrow agent Evans to disburse any of the funds she retained to Jaenson or anyone else; rather, the order simply directed Evans to hold the funds she obtained until further order of the court. *Id.*

On December 31, 1986, a notice of federal tax lien assessed December 30, 1986, under internal revenue laws was filed with the Lake County Recorder. Exhibit 2 to Supplement. On July 14, 1987, Eastside MRI issued a check payable to Derakhshan for $16,000, representing the value of Derakhshan's limited partnership interest in Eastside, and mailed the check to him. Complaint for Interpleader at 2, attached as Exhibit B to Petition for Removal, filed April 12, 1988 (hereinafter "Complaint for Interpleader").

Evans received and retained this check, pursuant to the Domestic Relations Court's order, but did not negotiate the check. According to Eastside MRI's complaint for interpleader, a final decree of divorce was entered on December 15, 1987. Complaint for Interpleader at 3.[2]

On December 29, 1987, Eastside MRI received a notice of levy from the IRS, against all obligations Eastside had owing to Derakhshan, thereby alerting Eastside MRI to competing claims for the $16,000 it had attempted to disburse to Derakhshan. Complaint for Interpleader at 3. As a result of these competing claims, on February 17, 1988, Eastside MRI issued a stop payment order on its first $16,000 check to Derakhshan, believing (correctly) that the unnegotiated check was still in the possession of Evans, the escrow agent. Complaint for Interpleader at 3.

On March 9, 1988, the complaint for interpleader in this case was filed in Lake County Domestic Relations court by Eastside MRI, with a newly issued $16,000 check for the sums owed to Derakhshan deposited with the Clerk of that Court. Complaint for Interpleader. According to a domestic relations court order filed in this court by Evans as a supplement to her pleadings, Jaenson was granted a divorce on May 26, 1988. *See* footnote 1. On March 3, 1989, the Domestic Relations Court issued an order referring specifically to the by-now worthless $16,000 check in Evans' possession,[3] and ordering Evans to make payments out of that check and any remaining cash in her possession to cover the remaining fees, and disbursing the remainder to Jaenson. Exhibit A to Evans' Motion to Supplement Pleading, filed March 22, 1989.

## B. Procedural History

The complaint in this interpleader action was filed on March 9, 1988, by Eastside MRI against Jaenson, Derakhshan, Evans, and the United States Internal Revenue Service, in the Domestic Relations Division of the Lake County Common Pleas Court. At the same time, Eastside MRI filed a motion for leave to deposit the second $16,000 check with the court, which motion was granted the same

---

2. *But see* Judgment Entry, filed March 3, 1989, attached as Exhibit A to Evans' Motion to Supplement Pleading, wherein the domestic relations

judge noted the date of the final divorce decree as May 26, 1988.

3. Eastside MRI's stop payment order had issued

day.[4]

The United States filed a notice of removal in this court on April 12, 1988. The United States filed a motion for summary judgment on June 4, 1990, and a supplement to its motion for summary judgment on September 13, 1990.

On October 19, 1990, Jaenson filed objections to the United States' motion for summary judgment, and a cross-motion for summary judgment. The United States responded to the cross-motion on December 3, 1990. As of that date, the issues were joined.

## III. PROCEDURAL MATTERS

### A. Jurisdiction

■ A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a). Because the Internal Revenue Service, a federal agency, is named as a defendant in this matter, this court's exercise of jurisdiction over this case is entirely appropriate. The Domestic Relations Court did not specifically assert jurisdiction over the funds at issue in this case until its March 3, 1989, order—almost a year after this action was removed to this court. This court therefore need not abstain from the exercise of its jurisdiction in this case.

on February 17, 1988.

4. To the best of this Court's knowledge, these funds remain on deposit with the Clerk of the Lake County Common Pleas Court, Domestic Relations Division.

5. If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the

### B. Standard of Review of Summary Judgment Motions

Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Supreme Court has said that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The *Anderson* court also observed that "summary judgment will not lie if ... the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248, 106 S.Ct. at 2510. The question to be answered here, then, is whether a genuine issue of material fact, on which a reasonable verdict for Jaenson could be based, is present. In this Magistrate Judge's opinion, there is no such issue of fact.

## IV. MERITS

■ In its motion for summary judgment, the United States asserts that the tax lien pursuant to 26 U.S.C. §§ 6321 and 6322[5] filed by the Internal Revenue Service with the Lake County Recorder on December 31, 1986, has priority over the claims of Linda Jaenson and the escrow agent, Janice Evans, to the funds held by the Lake County Do-

United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321.

Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time.

26 U.S.C. § 6322.

mestic Relations Court.[6] Jaenson, in her cross-motion for summary judgment, asserts that she had a prior-in-time judgment lien against the funds, and her interest was therefore entitled to priority over the federal tax lien.[7]

The question of priority between a federal tax lien and a state judgment lien is determined by federal law. "The relative priority of a lien competing with a federal tax lien is a question of federal law, although a state court's 'classification of a lien as specific and perfected is entitled to great weight . . .' " *S & S Gasket Co., Inc., v. United States*, 635 F.2d 568, 570 (6th Cir.1980) (citations omitted). In this case, no state court has yet ruled on the question of the specificity and perfection of the asserted state court judgment lien, so this court must rely solely on its own reading of federal law.

As a general proposition, the first-filed lien has priority over a later-filed lien, or, to put it differently, the lien which is first in time is first in right. In order to even enter this calculation, a lien must be choate, a concept which requires a certain amount of specificity and completeness in the lien.

> As against a recorded federal tax lien, the relative priority of a state lien is determined by the rule "first in time is first in right," which in turn hinges upon whether, on the date the federal lien was recorded, the state lien was "specific and perfected." A state lien is specific and perfected when "there is nothing more to be done . . .— when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." "Thus, the priority of each statutory lien . . . must depend on the time it attached to the property in question and became choate." *United States v. New Britain, infra.* These determinations are of course federal questions. *United States v. Waddill Co.*, 323

U.S. 353, 356–357, 65 S.Ct. 304, 306–307, 89 L.Ed. 294 . . . (1945).

*United States v. Equitable Life Assurance Society*, 384 U.S. 323, 327–328, 86 S.Ct. 1561, 1563–1565, 16 L.Ed.2d 593 (1966). The concept of choateness relates to the specificity and identifiability of a lien. "The liens may also be perfected in the sense that there is nothing more to be done to have a choate lien—when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *United States v. New Britain*, 347 U.S. 81, 84, 74 S.Ct. 367, 369, 98 L.Ed. 520 (1954). If a nonfederal lien is insufficiently choate, it is incomplete, and an incomplete lien cannot be first in time and such that it could be first in right. *See United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979).

> . . . [T]o be considered first in time, the nonfederal lien must be "choate," that is, sufficiently specific, when the federal lien arises. A state-created lien is not choate until the "identity of the lienor, the property subject to the lien, and the amount of the lien are established." . . . Failure to meet any one of these conditions forecloses priority over the federal lien, even if under state law the nonfederal lien was enforceable for all purposes when the federal lien arose.

*Id.* at 720–721, 99 S.Ct. at 1454–1455 (footnote omitted).

The problem Jaenson faces in this case is that her judgment lien does not have the choateness necessary to allow it priority over the federal tax lien even if it had been filed first, which it was not. Jaenson's argument boils down essentially to this: she asserts that on December 19, 1986, she received a valid and complete judgment against Derakhshan, and she should therefore be able to claim the funds at issue here in satisfaction of that judgment. But the court on that date

---

**6.** The other defendant to this action, Iraj Derakhshan, has made no appearance, and therefore has asserted no claim to the funds at issue in this case.

**7.** Escrow agent Janice Evans has filed nothing in this court indicating an interest in the funds at issue here. As she has not advanced a claim to the funds, this Magistrate Judge will not attempt

to guess what claims she could have raised, and then adjudicate them. Rather, this Magistrate Judge will operate on the assumption that by failing to make a filing, Evans has indicated her belief that the only parties with an interest in the funds at issue here are the United States and Jaenson.

ordered real property and funds *presently* restrained in the name of Iraj Derakhshan to be turned over to an escrow agent, and it ordered the escrow agent to take possession of funds subsequently directed to Derakhshan in the mail. The court did not order the escrow agent to turn over all or any of these funds to Jaenson. Jaenson asserts that the orders issued on December 19, 1986, entitle her to the disbursement of the $16,000 from Eastside MRI, in satisfaction of that judgment. In so doing, Jaenson confuses her own interests with those of the escrow agent, Evans.

Jaenson's assertion apparently is based on the mistaken impression that because the court ordered the escrow agent to take possession of funds directed to Derakhshan, the court necessarily intended for all funds taken in this manner to devolve to Jaenson's benefit. In another order issued on December 19, 1986, the court noted that certain of Derakhshan's patients may have claims to some of the funds directed to Derakhshan, and it ordered the escrow agent to take possession of the funds for that reason. *See* Exhibit D to Cross Motion. Clearly, the court did not intend, at least as of December 19, 1986, for all the funds commandeered by the escrow agent to go only to Jaenson.

As of December 31, 1986, when the Internal Revenue Service filed its tax lien with the Lake County Recorder, Jaenson had been awarded $42,191 in damages, and an unspecified amount of temporary monetary support. *See* Exhibit C to Cross–Motion. Although the court did specifically order the escrow agent to take possession of and disburse to Jaenson the balances contained in several Ameritrust bank accounts, none of the funds which the court ordered the escrow agent to seize subsequently, i.e., from Derakhshan's mail, were specifically ordered to be disbursed to Jaenson. *See* Exhibits A–D to Cross–Motion.[8] Out of all the domestic relations court's orders the parties have submitted to this court, the first specific mention of funds seized from Derakhshan's mail occurs in the March 3, 1989, order. That order was

filed well after the federal tax lien, which was filed on December 31, 1986. Jaenson's judgment lien was perfected and choate as of March 3, 1989, while the federal tax lien notice was filed December 31, 1986. Clearly, the federal tax lien was first in time, and therefore is first in right.

Even if this Magistrate Judge were to acknowledge that the prior domestic relations court's orders created a sort of "accounts receivable" in ordering Evans to take possession of Derakhshan's as yet undelivered mail, there is persuasive authority that the amounts received after the federal tax lien was in place would be subject to the federal tax lien. *See Texas Oil & Gas Corp. v. United States,* 466 F.2d 1040 (5th Cir. 1972), *cert. denied sub nom. Pecos County State Bank v. United States,* 410 U.S. 929, 93 S.Ct. 1367, 35 L.Ed.2d 591 (1973).

> Under the tax lien law as it developed for insolvent taxpayer-debtors, a private lien competing with a federal tax lien had to be 'choate' and perfected.... Choateness, a concept entirely court-made, ... requires that the private lien holder establish the identity of the lienor, the property subject to the lien, and the fixed amount of the lien.

*Id.* at 1045 (citations omitted).

> Because a judgment creditor, like a secured creditor, cannot attach his lien to the debtor's after-acquired accounts receivable until the accounts receivable come into existence regardless of whether he has taken all the necessary actions for perfection under state law, the judgment lien could not possibly become perfected *before* the security holder's interest becomes perfected.

*Id.* at 1048. Consequently, since Eastside MRI did not determine and disburse the amount of Derakhshan's interest in the partnership before July 14, 1987, Jaenson's interest in the $16,000 check Eastside MRI issued to Derakhshan could not exist before that date, either.

---

8. Indeed, it is possible that the awards made to Jaenson on December 19, 1986, have been satisfied by the disbursement to her of the funds

taken from the Ameritrust accounts—none of the documents before this court are clear on this question.

## V. CONCLUSION

For the above-noted reasons, this Magistrate Judge hereby grants the motion of the United States for summary judgment, and denies the cross-motion for summary judgment filed by Jaenson. The funds currently held by the Clerk of the Lake County Court of Common Pleas, Domestic Relations Division, shall be disbursed in their entirety to the United States upon demand. Each party to this action shall bear its own costs.[9]

IT IS SO ORDERED.

---

**9.** This Magistrate Judge recalls that at the September 8, 1992, conference with all parties, the escrow agent, Janice Evans, noted that by the terms of a domestic relations court order issued in 1988, she was entitled to approximately $2500 in fees for her efforts as an escrow agent in the domestic relations case. While this court is cognizant of her claim, it cannot take precedence over the United States' tax lien, because it was not choate as of December 31, 1986, when the tax lien attached. Consequently, Evans will have to look to the Lake County Court of Common Pleas, Domestic Relations Division, for her relief.