Cite as 2025 Ark. 89

# SUPREME COURT OF ARKANSAS

**No.** CR–24–646

| | | |
|---|---|---|
| | | **Opinion Delivered:** May 29, 2025 |
| STATE OF ARKANSAS | | |
| | APPELLANT | |
| | | APPEAL FROM THE BENTON |
| V. | | COUNTY CIRCUIT COURT |
| | | [NO. 04CR–23–1097] |
| RONALD RUSSELL | | |
| | APPELLEE | HONORABLE BRAD KARREN, |
| | | JUDGE |
| | | |
| | | MOTION GRANTED; APPEAL DISMISSED. |

**COURTNEY RAE HUDSON, Associate Justice**

The State of Arkansas brings this interlocutory appeal from the Benton County Circuit Court's order granting appellee Ronald Russell's motion in limine. For reversal, the State argues that the circuit court erred by excluding evidence of inculpatory chat sessions between Russell and law enforcement. We grant Russell's motion to dismiss the State's appeal because we lack jurisdiction pursuant to Arkansas Rule of Appellate Procedure–Criminal 3(a) (2023).

On July 26, 2023, the State filed a criminal information charging Russell with internet stalking of a child. Pursuant to Arkansas Code Annotated section 5–27–306(a)(2) (Supp. 2021), this offense is committed when a person twenty-one years of age or older "knowingly uses a computer online service, internet service, local internet bulletin board service, or any means of electronic communication" to "[s]educe, solicit, lure, or entice an

individual that the person believes to be fifteen (15) years of age or younger in an effort to arrange a meeting with the individual for the purpose of engaging in" sexual intercourse, sexually explicit conduct, or deviate sexual activity. The offense is a Class B felony unless the meeting actually takes place, in which case it is a Class Y felony. Ark. Code Ann. § 5-27-306(b). Although Russell was initially charged with Class B internet stalking, the information was later amended to designate the charge as a Class Y felony.

According to the probable-cause affidavit prepared by Detective Ron Coble with the Siloam Springs Police Department, Coble made a series of posts on the Whisper social-media application posing as a fourteen-year-old girl. A person with the username "Videogame_1" had contacted Coble's persona on several occasions prior to May 20, 2023, but had stopped talking to Coble once he indicated that his persona was fourteen years old. Coble's affidavit stated that on May 20, 2023, he was again contacted on Whisper by Videogame_1, who was later identified as Russell. From May 20 to May 30, 2023, Coble indicated that Russell kept wanting to meet the fourteen-year-old persona at Long John Silvers "to hang out and talk and see what happens." On May 30, Russell and Coble's persona discussed meeting at Long John Silvers and then going back to Russell's house to have sex. They arranged to meet at 2:00 p.m. the next day, on May 31. Russell stated that he would be walking to the restaurant and that he would be wearing a blue shirt and shorts. At the designated time, Russell indicated that he was in the parking lot behind Long John Silvers. Coble stated that he saw Russell at that location wearing a blue shirt and shorts and placed him under arrest.

During discovery, the State produced the May 20–30, 2023 electronic communications that Coble and Russell had exchanged on Whisper. Russell learned, however, that the State did not possess the earlier communications between Russell and Coble that were referenced in the probable-cause affidavit because Coble had not retained them. On August 7, 2024, Russell filed a motion in limine to prevent the State from introducing at trial the electronic communications that had been preserved. He argued that this evidence should be excluded under the "rule of completeness," Ark. R. Evid. 106, because it would be misleading for the jury to consider the preserved messages without the context of the additional, deleted messages. He also asserted that this evidence should be excluded pursuant to Ark. R. Evid. 403 due to the danger of unfair prejudice and confusion of the issues if the jury received only the preserved messages. Finally, Russell argued that the State had a duty to preserve his written statements and that a *Brady* violation would occur if the preserved messages were allowed to be introduced without the deleted messages. He contended that the deleted messages were exculpatory or, at the very least, impeaching because he said nothing incriminating in those earlier conversations and ended the communications when he learned the female persona's age. He also claimed that the deleted messages would be relevant to a potential entrapment defense.

In its response to the motion in limine, the State argued that any Whisper conversations between Coble and Russell prior to May 20, 2023, were not deleted in the context of an active case; rather, the messages were deleted because no illegal activity had occurred. The State claimed that, in accordance with his specialized training related to chat-based operations, Coble would periodically delete old conversations from his phone so as to

organize and keep track of viable cases. The State asserted that Russell was equally to blame for the absence of his prior communications because he had deleted the Whisper app from his phone prior to his arrest. With regard to the specific grounds raised in Russell's motion, the State contended that exclusion of the preserved messages was not warranted under Ark. R. Evid. 106 because it is a rule of inclusion rather than exclusion; that Russell's reliance on Ark. R. Evid. 403 was "inapposite" because the deleted texts contained inadmissible character evidence pursuant to Ark. R. Evid. 404; that Russell could not prove a *Brady* violation at the pretrial stage; that the State was not required to preserve the prior conversations because they did not appear to be exculpatory when they were deleted; and that Russell cannot demonstrate bad faith because Coble was following standard operating procedures when he deleted the messages.

The circuit court held a hearing on Russell's motion on August 30, 2024. Coble testified that Whisper is a social media application noted for its anonymity. He explained that he conducts his operations on Whisper by creating a "post," which is a graphic with overlaid text, hinting that he is a school–aged female. Other users can then view the post and, if they choose, initiate a chat session with him by sending a private message. Coble stated that it is not possible to send messages directly to another user in the application. He testified that each post typically generates two hundred messages over a couple of days. Depending on their age ranges and locations, Coble narrows down the users to whom he responds. Early on in each conversation, Coble indicates that he is a fourteen-year-old girl. He stated that most users terminate the conversation at that point. If the user remains interested, however, Coble continues the conversation. Once the user tries to arrange a

4

meeting for sex, Coble preserves the chat logs by downloading them, which he stated takes at least thirty minutes.

Coble testified that he was trained to conduct chat operations through the Department of Justice, that he follows the Department's policies and procedures, and that he had been instructed that there is no reason to preserve noncriminal conversations. He stated that while he was not provided with a specific timeline in his training, his standard practice is to maintain innocuous chat records on his phone for at least two weeks before deleting them. He agreed, however, that he had a hard drive on which he could store deleted chats.

Coble remembered chatting with Videogame_1, Russell's username, prior to May 20, 2023, but after learning the age of Coble's female persona, Russell informed her that she was too young and terminated the conversation. Coble testified that he deleted these messages with Russell after two weeks in accordance with his usual policy because they were not sexual in nature and did not contain evidence of illegal conduct. Coble stated that a few weeks later, on May 20, Russell responded to a new post and continued to converse with him even after Coble reminded him of his persona's age. After they arranged to meet and Russell was arrested, Coble obtained a search warrant for Russell's phone. The Whisper application was not present at that time, although Coble found screenshots of the phone's home screen showing that Whisper had previously been installed and of posts that Russell had made on that application. Coble testified that he had been unable to recover any of his deleted chats with Russell from either his or Russell's phone.

The circuit court entered an order on September 6, 2024, granting Russell's motion in limine and ruling that the preserved May 20–30 chat messages are inadmissible. The court did not conduct an analysis under *Brady v. Maryland*, 373 U.S. 83 (1963), finding that it was inapplicable at the pretrial stage of the proceedings; nor did the court address Russell's arguments under Arkansas Rules of Evidence 106 and 403. Instead, the circuit court analyzed the issue as a due-process violation pursuant to *California v. Trombetta*, 467 U.S. 479 (1984), *Arizona v. Youngblood*, 488 U.S. 51 (1988), and *Wenzel v. State*, 306 Ark. 527, 815 S.W.2d 938 (1991). As we stated in *Wenzel*, *Trombetta* imposes a duty on the State to preserve evidence only when its exculpatory value is apparent to law enforcement before its destruction and the defendant cannot obtain comparable evidence by other reasonably available means. In addition, under *Youngblood*, if evidence is only potentially useful to the defense rather than exculpatory, the defendant must also show that law enforcement destroyed the evidence in bad faith and not in accord with their standard operating procedures.

Utilizing the *Trombetta/Youngblood* analysis, the circuit court set forth detailed findings of fact and conclusions of law with regard to whether the State had a constitutional duty to preserve Russell's noncriminal chats prior to May 20, 2023. The court found that the State did not meet its burden of showing by a preponderance of the evidence that the messages prior to May 20 had no apparent exculpatory value; that the State failed to meet its burden of showing that the deleted messages were available by any other means, such as defendant's own cell phone; that the State failed to prove that Coble followed available standard operating procedures for retention of noncriminal matters; and that Russell had

met his burden of showing that Coble acted in bad faith by deleting the pre–May 20 chat messages because they were potentially useful or played a significant role in Russell's defense. The State filed a timely notice of interlocutory appeal from the circuit court's order on September 11, 2024. Russell filed a motion to dismiss the State's appeal as improper under Ark. R. App. P.–Crim. 3, and we ordered that this motion be taken up with the case.

On appeal, the State contends that the circuit court's ruling excluding the inculpatory chat sessions between Russell and Coble was reversible error. The State claims that the court committed four separate errors of law by (1) requiring law enforcement to preserve noncriminal encounters with citizens in the absence of an ongoing investigation; (2) assigning the burden of proof to the State rather than the defendant on all but one element of the *Trombetta/Youngblood* test; (3) finding that the *Trombetta* requirement that the defendant be unable to obtain comparable evidence was not satisfied if Russell could not obtain the chatlogs themselves from another source; and (4) applying a flawed understanding of the bad-faith requirement in ruling that Coble's deletion of the texts in accordance with his personal retention policy was not sufficient evidence of good faith.

As a threshold matter, we must decide whether we have jurisdiction to hear the State's appeal in this case. Unlike that of a criminal defendant, the State's right to appeal is limited by the provisions of Rule 3 of the Arkansas Rules of Appellate Procedure–Criminal. *State v. Siegel*, 2018 Ark. 269, 555 S.W.3d 410; *State v. Jones*, 2012 Ark. 454, 427 S.W.3d 635. According to Rule 3(a), "[a]n interlocutory appeal on behalf of the state may be taken only from a pretrial order in a felony prosecution which (1) grants a motion under Ark. R. Crim. P. 16.2 to suppress seized evidence, (2) suppresses a defendant's confession, or (3)

7

grants a motion under Arkansas Rule of Evidence 411(c) to allow evidence of the victim's sexual conduct." Furthermore, we will not consider an interlocutory appeal filed under subdivision (a)(1) or (2) unless the correct and uniform administration of the criminal law requires review by this court. Ark. R. App. P.–Crim. 3(d).

In his motion to dismiss and in his response brief, Russell argues that we lack jurisdiction of this interlocutory appeal because it is from an order granting a motion in limine rather than a motion to suppress as required by Rule 3(a)(1). He also asserts that this appeal fails to satisfy the requirements of Rule 3(d) because resolution of the issues turns on facts unique to this case and involves the application, rather than the interpretation, of the law. The State disagrees, contending that it is the substance of the motion that controls, not the title, and that Russell's motion qualifies as a suppression motion under Ark. R. Crim. P. 16.2.

We agree with Russell that this appeal is improper under Rule 3(a). First, even if we disregard the title of Russell's motion, the evidence that Russell sought to exclude was not "seized" as required by Rule 3(a)(1). *See* Ark. R. Crim. P. 3(a)(1) (referring to a motion under Ark. R. Crim. P. 16.2 to suppress "seized evidence"). For purposes of Rule 16.2, a "seizure" is defined as "the taking of any person or thing or the obtaining of information by an officer pursuant to a search or under other color of authority." Ark. R. Crim. P. 10.1(b). Here, the evidence at issue was the incriminating communications between Russell and Coble on the Whisper application that Coble had downloaded and saved. No person or thing was taken, and the information that Coble obtained while impersonating a fourteen-year-old girl was not pursuant to a search or under color of authority.

8

Second, it is also apparent from the substance of Russell's motion that it was not filed "under Ark. R. Crim. P. 16.2[.]" Ark. R. Crim. P. 3(a)(1). Rule 16.2 provides as follows:

(a) Objection to the use of any evidence, on the grounds that it was illegally obtained, shall be made by a motion to suppress evidence. The phrase "objection to the use of any evidence, on the grounds that it was illegally obtained," shall include but is not limited to evidence which:

1. Consists of tangible property obtained by means of an unlawful search and seizure; or

2. Consists of a record of potential testimony reciting or describing declarations or conversations overheard or recorded by means of eavesdropping; or

3. Consists of a record or potential testimony reciting or describing a confession or admission of a defendant involuntarily made; or

4. Was obtained as a result of other evidence obtained in a manner described in subdivisions one, two, and three; or

5. Consists of the prospective in-court identification of the defendant based on an unlawful pre-trial confrontation.

The motion shall be made to the court which is to conduct the trial at which such evidence may be offered in evidence.

(b) The motion to suppress shall be timely filed but not later than ten (10) days before the date set for the trial of the case, except that the court for good cause shown may entertain a motion to suppress at a later time.

(c) Renewal of a motion to suppress which has been denied may be allowed on the ground of newly discovered evidence or as the interests of justice require.

(d) An order granting a motion to suppress prior to trial shall be reviewable on appeal pursuant to Rule of Appellate Procedure–Criminal 3.

(e) Determination. A motion to suppress evidence shall be granted only if the court finds that the violation upon which it is based was substantial, or if otherwise required by the Constitution of the United States or of this state. In determining whether a violation is substantial the court shall consider all the circumstances, including:

(i) the importance of the particular interest violated;

(ii) the extent of deviation from lawful conduct;

(iii) the extent to which the violation was willful;

(iv) the extent to which privacy was invaded;

9

(v) the extent to which exclusion will tend to prevent violations of these rules;

(vi) whether, but for the violation, such evidence would have been discovered; and

(vii) the extent to which the violation prejudiced moving party's ability to support his motion, or to defend himself in the proceedings in which such evidence is sought to be offered in evidence against him.

The text of Rule 16.2(a) clearly states that it applies to motions to suppress evidence "on the grounds that it was illegally obtained[.]" Russell did not claim in his motion in limine that the incriminating chats he sought to prevent the State from introducing were illegally obtained. Instead, he asserted that they should be excluded due to the State's failure to preserve his earlier, nonincriminating statements, and the circuit court agreed, concluding that this failure implicated Russell's due-process rights. While the State is correct that the list in Rule 16.2(a) is nonexclusive, all of the examples on the list are of evidence that was illegally obtained, which is not the case here. We are not persuaded by the State's contention that Russell's due-process claim is analogous to a confession that is illegally obtained based on an antecedent violation of *Miranda v. Arizona*, 384 U.S. 326 (1966), because in that situation, there is a direct correlation between the constitutional violation and the evidence that is subsequently obtained.

The State also argues that Rule 16.2(a) pertains only to illegally obtained evidence but that the remainder of the rule, including the provision in Rule 16.2(d) authorizing interlocutory appeals, applies to *all* motions to suppress. This argument is without merit, as the comments to Rule 16.2 make clear. Comment I lists examples of grounds on which a motion to suppress may be based, and all of these examples contemplate evidence that was obtained in an illegal manner. Ark. R. Crim. P. 16.2 cmt. I. In addition, Comment II

10

provides that "Rule 16.2(d) is intended to make interlocutory review available to the prosecution *under the circumstances described*." Ark. R. Crim. P. 16.2 cmt. II (emphasis added). Thus, it is apparent from the comments that the provisions in Rule 16.2 are interrelated and that subsection (d) must be read in conjunction with subsection (a).

Despite the State's assertion that Russell's motion is "similar enough" to a Rule 16.2(a) suppression motion to be treated as one, we have held that a motion in limine to suppress the use of evidence is distinguishable from a motion to suppress. *Mhoon v. State*, 369 Ark. 134, 251 S.W.3d 244 (2007). "A motion to suppress evidence presupposes that the evidence was illegally obtained[,]" while "[a] motion in limine deals with the admissibility of evidence, rather than illegally obtained evidence." *Id*. at 137, 251 S.W.3d at 247. We have therefore dismissed a previous interlocutory appeal by the State from the denial of a motion in limine, holding that we lacked jurisdiction. *State v. Russell*, 271 Ark. 817, 611 S.W.2d 518 (1981). Furthermore, we have also dismissed a State interlocutory appeal from the grant of a "motion to suppress" when the evidence at issue was not excluded because it was illegally obtained but rather was excluded because there was insufficient time for the expert defense witness to adequately evaluate it before trial. *State v. Stuart*, 306 Ark. 24, 810 S.W.2d 939 (1991). Similarly, here, we lack jurisdiction to consider the merits of the State's interlocutory appeal because it is not from an order granting a motion under Rule 16.2 to suppress seized evidence, or from one of the other pretrial orders listed in Ark. R. App. P.–Crim. 3(a). Accordingly, we grant Russell's motion to dismiss the appeal on this basis, and there is therefore no need to address whether the appeal satisfies the additional

requirement in Rule 3(d) that it involve the correct and uniform administration of the criminal law.

Motion granted; appeal dismissed.

WOOD and WOMACK, JJ., and Special Justice TROY BRASWELL concur.

BRONNI, J., not participating.

**RHONDA K. WOOD, Justice, concurring.** I join the majority opinion in full. I note this case was before us on an interlocutory basis and this means it will return to the trial court to proceed. The trial court granted the defendant's motion in limine on September 6, 2024. This was before this court's opinion on October 24, 2024, in *State v. Clarks* that fully clarified the legal test for courts to use when law enforcement "loses or destroys evidence." 2024 Ark. 158, 699 S.W.3d 72. As trial courts often revisit motions in limine as a case progresses, I am confident that if that occurs here, it will be consistent with *Clarks* now that the trial court will have had an opportunity to review it.

I also refer Rule 3(a) of the Arkansas Rules of Appellate Procedure-Criminal to the Arkansas Supreme Court Criminal Practice Committee to review whether limiting State's appeals on suppression issues to "seized" evidence is too restrictive and the rules involving state appeals generally.

WOMACK, J., and Special Justice TROY B. BRASWELL, JR., join.

*Tim Griffin*, Att'y Gen., by: *Christian Harris*, Sr. Ass't Att'y Gen., for appellant.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellee.