HINKLEY & DONOVAN

v.

William D. PAINE, III, et al.

The EXETER BANKING COMPANY

v.

EXETER DEPOT, INC., et al.

INDIAN HEAD NATIONAL BANK
OF PORTSMOUTH

v.

UNITED STATES of America and State
of New Hampshire.

Civ. A. Nos. 76–19, 76–104, 76–201.

United States District Court,
D. New Hampshire.

Jan. 14, 1977.

1014

Gerald C. Miller, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., for the U. S.

James C. Sargent, Jr., Asst. Atty. Gen., Concord, N. H., for State of N. H.

John M. Winiarski, Shaines, Madrigan & McEachern, Portsmouth, N. H., for Indian Head Nat. Bank of Portsmouth.

PARTIAL SUMMARY JUDGMENT

BOWNES, District Judge.

These three interpleader actions were initially commenced in the State Court and removed here by the United States. The facts have been stipulated in each case, and they have been consolidated because the primary parties and the issues of law are the same in each.

The basic issue is whether the United States or the State of New Hampshire has a priority interest in collecting their respective claims for unpaid taxes. A secondary issue is whether attorneys' fees and costs should be paid to the plaintiffs before satisfying the claims of the other parties. The statutes involved are 26 U.S.C. §§ 6321–6323 and 6331, and NH RSA 78–A:7, 20 and 21.

The Federal Courts are faced with the recurring problem of whether a lien created by a state statute takes priority over a federal tax lien. *United States v. Equitable Life Assurance Society*, 384 U.S. 323, 86 S.Ct. 1561, 16 L.Ed.2d 593 (1966); *cf. United States v. Town of Marlborough*, 305 F.Supp. 718 (D.N.H.1969); *United States v. Town of Pittsfield*, 302 F.Supp. 316 (D.Me. 1969). This is because federal law, not state law, determines the priority between a federal tax lien and competing liens. *Aquilino v. United States*, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); *United States v. Acri*, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1955); *United States v. Security Trust & Savings Bank*, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950); *Town of Marlborough, supra*, 305 F.Supp. at 720. The reason for applying federal law is the desirability of a uniform application of federal tax laws. *United States v. Gilbert Associates, Inc.*, 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071 (1953).

The provision of the Internal Revenue Code creating the federal tax liens involved in these cases does not expressly confer upon them priority over competing liens. 26 U.S.C. § 6321. Instead, the common law principle that "the first in time is the first in right" is applied, and the priori-

ty of liens depends on the time competing liens attach and become choate. *Equitable Life, supra*, 384 U.S. at 328, 86 S.Ct. at 1564; *United States v. Pioneer American Insurance Company*, 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963); *United States v. New Britain*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954). There are certain classes of secured creditors and other parties with an interest in the property to which a federal lien has attached who are protected or given priority by the Internal Revenue Code. 26 U.S.C. § 6323. This will be treated separately, *infra*.

One other consideration is whether or not any of the debtors are insolvent. "Whenever any person indebted to the United States is insolvent . . . the debts due to the United States shall be first satisfied. . . . " 31 U.S.C. § 191. The facts with regard to this issue have not been stipulated, and the issue has been expressly reserved.

The state liens in these cases can only prevail over the federal tax liens if they are choate and attached before the federal liens. *United States v. Vermont*, 377 U.S. 351, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964); *New Britain, supra*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520.

A lien is choate "when [1] the identity of the lienor, [2] the property subject to the lien, and [3] the amount of the lien are established." *New Britain, id.* at 84, 74 S.Ct. at 369.

### IMPLIED LIEN

The State contends that an implied lien is established under NH RSA 78–A:7. Part II of that statute provides:

Each operator shall keep books and records in a form acceptable to the department showing the amount of all taxes collected. The operator shall pay the taxes over to the state as provided in this section. If the department believes that special action is necessary because payment of taxes collected may be in jeopardy, it may direct an operator to keep all taxes collected separate from any other funds. The department may require that

the taxes be periodically deposited in a bank designated by the department, in an account in the name of the commission. The department may withdraw these tax collections from the bank account and apply them to the payment of the taxes due from the operator. When an operator commingles tax money with money belonging to him, the claim of the state for the tax is traceable, is enforceable against all other claims and takes precedence over all other claims against the commingled funds. No taxes collected by an operator under this chapter may be sent outside the state without the written consent of the department.

None of the three elements of a choate lien are met by this "implied lien" at the time of collection by the operator. The State is not aware of the transaction, so the identity of the lienor is not known; the property subject to the lien has not been identified and segregated; nor is the amount of the lien known or established. Had the State exercised its statutory authority to "require that the taxes be periodically deposited in a bank designated by the department, in an account in the name of the commission," the segregated funds, their amount, and the identity of the lienor would be clearly established, and the lien would be choate. As the United States notes in its memorandum at page 7, "[T]he deposited taxes would no longer belong to the taxpayer-operator, but would belong to the State . . .."

The State's contention that an implied lien is created at all is of dubious merit, *Flack v. Agency,* 96 N.H. 335, 76 A.2d 788 (1950); cf. *Allen v. Bemis,* 99 N.H. 247, 108 A.2d 549 (1954); but:

1. If any operator required to collect and transmit a tax under this chapter neglects or refuses to pay the tax after demand, the amount, together with all penalties and interest provided for in this chapter and together with any costs that may accrue in addition to the tax becomes a lien in favor of the state upon all property and rights to property whether real or personal, belonging to the operator. The lien arises at the time demand is made by the commission and continues until the liability for the sum, with interest and costs, is satisfied or becomes

There is no dispute that the State of New Hampshire has, by statute, acquired liens upon " . . . all property and rights to property . . . " of each taxpayer-operator for unpaid meals and rooms taxes, plus statutory additions, and that the lien arose at the time demands for payment of the taxes were made. RSA 78–A:21. U. S. Memorandum, p. 5.

## STATUTORY LIEN

The next question is whether the statutory lien was choate at the time demands for payment were made by the State or at some other time before assessment was made by the United States.

In applying the three-part *New Britain* test to determine the choateness of the State's lien, I note the similarity in the phraseology and structure of the state and federal statutes which create and enforce the liens.[1] *See United States v. Vermont,* 377 U.S. at 351, 352, 354, 84 S.Ct. 1267. A comparison of the two statutes reveals the following:

1. *Identity of Lienor*

New Hampshire is identified as the lienor when:

> any operator required to collect and transmit a tax under this chapter neglects or refuses to pay the tax after demand. . . . NH RSA 78–A:21.

The United States is identified as the lienor when:

> any person liable to pay any tax neglects or refuses to pay the same after demand. . . . 26 U.S.C. § 6321.

2. *Property Subject to the Lien*

The New Hampshire language is:

unenforceable. Certificates of release of such lien shall be given by the commission on the satisfaction of the lien. NH RSA 78–A:21.

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person. 26 U.S.C. § 6321.

upon all property and rights to property whether real or personal, belonging to the operator. NH RSA 78–A:21.

The Federal language is:

upon all property and rights to property, whether real or personal, belonging to such person. 26 U.S.C. § 6321.

3. *Amount of the Lien*

The State statute sets the lien as:

the amount [of the tax], together with all penalties and interest provided for in this chapter and together with any costs that may accrue in addition to the tax . . . . NH RSA 78–A:21.

The Federal language is:

the amount [of the tax] (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) . . . . 26 U.S.C. § 6321.

There is no substantive difference between the requirements for choateness of the state and federal statutes.

*Vermont, supra,* is the closest case on point that I have found. In that case, the State of Vermont assessed a solvent taxpayer for past due state taxes pursuant to statutory language virtually the same as that of New Hampshire in this case. The United States assessment followed shortly. The State sued and obtained a judgment in State Court. Then the United States sued in Federal Court to uphold its lien. The District Court held that the State lien had priority and was upheld by the United States Supreme Court.

The United States seeks to distinguish that case because "the statutory scheme in each of those cases *[Vermont* and *New Britain]* provided for distraint or levy without intervening judicial proceedings." Memorandum, p. 6. The Court in *Vermont, supra,* 377 U.S. at 359, 84 S.Ct. 1267, did note that the statutes involved in *Vermont* and *New Britain* were "summarily enforcible," but this was not basic to its discussion. *Id.* at n.12. The record in *New Britain* does

not disclose whether New Britain, Connecticut, foreclosed on its lien by administrative process, but in *Vermont* the State did not foreclose by administrative process even though it had that statutory right.

## THE FILING ISSUE

■ The next issue is whether New Hampshire is a "judgment lien creditor" or a "holder of a security interest" within the meaning of 26 U.S.C. § 6323(a) which provides:

The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof . . . has been filed by the Secretary or his delegate.

In *Gilbert Associates, supra,* 345 U.S. at 363–364, 73 S.Ct. 701, 703, the Supreme Court held that a New Hampshire town was not a judgment creditor within the meaning of the statute.[2] That ruling still controls.

. . . The Supreme Court of New Hampshire held that since notice of the Government's lien was not filed until August 6, 1948, and the Town's taxes were assessed on April 1, 1947, and April 1, 1948, respectively, and such tax assessments are "in the nature of a judgment" under the law of New Hampshire, the Town was a judgment creditor within the meaning of [26 U.S.C. § 6323] and the Government's lien was not valid as against the Town's.

Was the Town a judgment creditor within the meaning of [26 U.S.C. § 6323]? The New Hampshire Supreme Court in the instant case said:

"It is settled by our decisions that the assessment of a tax is in the nature of a judgment, enforced by a warrant instead of an execution. *Boody v. Watson,* 64 N.H. 162, 167, 9 A. 794; *Jaffrey v. Smith,* 76 N.H. 168, 171, 80 A. 504; *Nottingham v. Company,* 84 N.H. 419, 151 A. 709. See also, *Automatic Sprinkler Corp. v. Marston,* 94 N.H. 375, 54

2. Ironically, the result in *Gilbert* would now be different due to section 6323(b)(6) which provides in effect that towns with real estate liens have priority over a federal tax lien.

A.2d 154." 97 N.H. 411, 414, 90 A.2d 499, 502.

We would not question or presume to say what the nature and effect of a tax proceeding is in New Hampshire. The state is free to give its own interpretation for the purpose of its own internal administration.

The Supreme Court of New Hampshire freely concedes, however, as it must, that the meaning of a federal statute is for this Court to decide. Congress enacted [26 U.S.C. § 6323] to meet the harsh condition . . . that a secret federal tax lien was good against a purchaser for value without notice.

A cardinal principle of Congress in its tax scheme is uniformity, as far as may be. Therefore, a "judgment creditor" should have the same application in all the states. In this instance, we think Congress used the words "judgment creditor" in [26 U.S.C. § 6323] in the usual, conventional sense of a judgment of a court of record, since all states have such courts. We do not think Congress had in mind the action of taxing authorities who may be acting judicially as in New Hampshire and some other states, where the end result is something "in the nature of a judgment," while in other states the taxing authorities act quasi-judicially and are considered administrative bodies.

We conclude that whatever the tax proceedings of the Town of Walpole may amount to for the purposes of the State of New Hampshire, they were not such proceedings as resulted in making the Town a judgment creditor within the meaning of [26 U.S.C. § 6323]. (Cites omitted.)

I now turn to the question of whether New Hampshire is a holder of a security interest. Since I have been unable to find any cases on point, I must determine the congressional intent of the statute.

Public Law 89–719, which amended 26 U.S.C. § 6323, added the words "holder of a security interest." The question, which could not have been answered under *Gilbert* and which has not yet been answered defin-itively, is whether the State has the status of a "holder of a secured interest." Section 6323(h)(1) provides:

The term "security interest" means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

The Senate Report which accompanied P.L. 89–719 elucidated this definition further.

(8) *Definitions and special rules (sec. 6323(h) and (i) of the code)*

A number of terms relating to the provisions discussed to this point are defined in the bill. The more significant of these are discussed below.

(a) *Security interest.*—Under present law, mortgagees and pledgees are given priorities over tax liens, notices of which have not yet been filed. The bill, as previously indicated, applies this priority status to holders of a "security interest." A security interest is an interest in property acquired by contract for the purpose of securing payment or performance of an obligation or as indemnification against loss or liability. This term, which includes mortgagees and pledgees, is used to substantially conform the internal revenue laws in this respect to the terminology of the Uniform Commercial Code. It is intended that if a Federal tax lien is invalid against an initial holder of a security interest, it also is to be invalid to the same extent against any person who succeeds to the interest of the initial holder, whether by purchase or otherwise.

A security interest is considered as arising when the following conditions are met:

(1) the property is in existence and the interest is protected under local law

against a subsequent judgment lien arising out of an unsecured obligation; and

(2) to the extent the holder has parted with money or money's worth.

For Federal tax purposes, a security interest is not considered as existing until the conditions set forth here are met even though local law may relate a security interest back to an earlier date and even though it might be an effective security interest as of the earlier date under the Uniform Commercial Code. 89 U.S.Code Cong. & Adm.News, 3–3734.

■ The 1966 Amendment to 26 U.S.C. § 6323(a) was an attempt to more closely conform federal law to the Uniform Commercial Code. 89 U.S.Code Cong. & Adm. News, 3–3722 and 3–3724. Congress, in changing the term "pledgees" to the words "holders of security interests" did not intend to include noncommercial transactions such as state tax liens.

■ Congress very specifically provided for various kinds of transactions which would have priority even over filed tax liens. In doing so, they could have included state tax liens in general as they did tax assessments on real property. 26 U.S.C. § 6323.

The comment to the amendment to Section 6323(a) in the Senate Report, *supra*, at 3724–3725 is not particularly helpful except insofar as it emphasizes the nominal nature of the change from "pledgees" to "holders of security interests."

The substitution of "holder of a security interest" for "mortgagee" and "pledgee" replaces the latter terms with a more general term used in the Uniform Commercial Code. More important, however, it is intended that, under the bill, the various types of interests defined in this provision are to have a priority over a nonfiled Federal tax lien if they come within the definitions of these terms (discussed in No. 8 below), whether or not in all other regards they are definite and complete at the time notice of the tax lien is filed.

The second sentence indicates that the concept of "choateness" would be abolished if the term "holders of secured interests" were to be applied broadly outside of commercial settings. If this transaction were to be held a "secured interest" within the meaning of the statute, it would be unnecessary to determine whether it was choate.

The statute also emphasizes the commercial nature of the term "holder of a security interest" by its requirement that the holder must have parted "with money or money's worth." 26 U.S.C. § 6323(b)(6)(B).

Although it is true that a taxpayer parts with his money, and it could be argued that a state gives its citizens money's worth, these points are inapposite to the cases at hand. All taxes, both state and federal, involved in this litigation are collected by the businesses as agents of the respective governments. The businesses themselves are not paying the taxes for their own benefit. (The F.I.C.A. tax is paid in part directly by the employer, but the benefit is to the employee.) I, therefore, hold that the State is not a holder of a security interest.

■ Therefore, I must now determine which liens attached "first in time" without regard to perfection by notice. *Equitable Life, supra; Pioneer American, supra; New Britain, supra; Vermont, supra.*

In *Hinkley & Donovan v. William D. Paine, III, et al.*, Civ. No. 76–19, Stipulation 5 states:

On January 9, 1975, the State of New Hampshire made an assessment for and demand for payment of amounts due under RSA 78–A . . . . .

Stipulation 6(a) states:

On October 27, 1975, a delegate of the Secretary of the Treasury of the United States of America made an assessment against Mt. Washington Hotel Corporation for unpaid withholding and Federal Insurance Contribution Act taxes . . . . .

Stipulation 6(b) states:

On March 24, 1975, a delegate of the Secretary of the Treasury of the United

States of America made an assessment against Mt. Washington Hotel Corporation for unpaid Federal Unemployment Tax Act taxes . . . . .

Therefore, the State's lien is "first in time," and the State would be entitled to summary judgment except for the reserved question of insolvency.

In *The Exeter Banking Company v. Exeter Depot, Inc., et al.*, Civ. No. 76–104, Stipulation 2 states:

On March 17, 1975, a delegate of the Secretary of the Treasury of the United States of America made an assessment against Exeter Depot, Inc., for unpaid Federal Insurance Contributions Act and withholding taxes, penalties and interest for the fourth quarter of 1974 in the total amount of $9,135.84. After application of all payments or credits made against said assessment, there remains due and owing upon said assessment the sum of $6,257.82, which sum is in excess of the fund before the Court.

Stipulation 6 states:

On August 25, 1975, a New Hampshire Tax Return, due July 31, 1975, reporting the amount of $3,944.00 as due from Exeter Depot, Inc., pursuant to RSA 78–A (meals and rooms taxes) for the quarter ending June 30, 1975 was completed by Thomas J. Burke, an officer of said corporation, and a verbal demand for payment of the amount shown as due was made at that time by an agent of the State. Said return was filed on August 28, 1975 together with a check in an amount equal to full payment of the amount shown on the return; however, said check was returned to the State of New Hampshire for lack of funds prior to September 23, 1975. On September 23, 1975 at 2:30 p. m. the State of New Hampshire personally served notice of its assessment and made demand upon the taxpayer for payment . . . . .

The United States is entitled to summary judgment in this case.

In *Indian Head National Bank of Portsmouth v. United States of America and State of New Hampshire*, Civ. No. 76–201, Stipulation 2 states:

On September 1, 1975, a delegate of the Secretary of the Treasury of the United States of America made an assessment against Hart House, Inc. for unpaid Federal Insurance Contribution Act and withholding taxes, penalties and interest for the fourth quarter of 1974 in the total amount of $3,046.70. No payments or credits have been made against said assessment and there remains due and owing upon said assessment the sum of $3,046.70, which sum is in excess of the fund before the Court.

Stipulation 6 states:

On September 4, 1975, the State of New Hampshire personally served notice of assessments and made demands upon Hart House, Inc., d/b/a Hart House General Store and Aaron Conant Coffee Shop for payments of amounts due to be paid over pursuant to RSA 78–A (meals and rooms taxes) for the quarters ending March 31, 1975 and June 30, 1975, remaining unpaid in the net amount of $2,153.40, which amount reflects all payments and credits received to the date of assessment.

The United States is entitled to summary judgment in this case.

## ATTORNEYS' FEES

26 U.S.C. § 6323(b)(8) provides: Even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid—

> \*      \*      \*      \*      \*      \*

—With respect to a judgment or other amount in settlement of a claim or of a cause of action, as against an attorney who, under local law, holds a lien upon or a contract enforcible against such judgment or amount, to the extent of his reasonable compensation for obtaining such judgment or procuring such settlement, except that this paragraph shall not apply to any judgment or amount in settlement of a claim or of a cause of action against the United States to the extent that the United States offsets

such judgment or amount against any liability of the taxpayer to the United States.

In *United States v. State National Bank of Connecticut*, 421 F.2d 519 (2d Cir. 1970), the Court held that "a disinterested bank-stakeholder is not entitled to attorney's fees from a fund when the total amount is insufficient to satisfy prior federal tax liens." *Id.* at 521. I extend that holding to funds insufficient to pay state tax liens.

In *Hinkley & Donovan v. William D. Paine, III, et al.*, Civ. No. 76–19, the Clerk will set a hearing on the reserved question of insolvency.

In *The Exeter Banking Company v. Exeter Depot, Inc., et al.*, Civ. No. 76–104, and *Indian Head National Bank of Portsmouth v. United States of America and State of New Hampshire*, Civ. No. 76–201: Judgment for the United States is granted.

SO ORDERED.