ISLAND TITLE CORPORATION, Plaintiff,

v.

Barry W. BUNDY; Michael R. Mullholland; Alan Katsuzo Kozuki And Nelly Kozuki; Department of Taxation, State of Hawai'i; United States of America; Department of Treasury; Internal Revenue Service; Department of Labor & Industrial Relations, State of Hawaii, Defendants.

Civ. No. 06–00448 ACK–BMK.

United States District Court, D. Hawai'i.

April 11, 2007.

Jade L. Ching, Jason H. Kim, Shellie K. Park–Hoapili, Alston Hunt Floyd & Ing, Honolulu, HI, for Plaintiff.

Steven B. Songstad, Wailuku, HI, Mary H.Y. Bahng, Frances E.H. Lum, Office of the Attorney General, Honolulu, HI, Adam F. Hulbig, U.S. Department of Justice, Washington, DC Edric Ming–Kai Ching, Office of the United States Attorney, Honolulu, HI, for Defendants.

## ORDER GRANTING DEFENDANT UNITED STATES' MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT DEPARTMENT OF TAXATION, STATE OF HAWAI'I AND PLAINTIFF ISLAND TITLE'S MOTIONS FOR SUMMARY JUDGMENT

KAY, Senior District Judge.

### PROCEDURAL BACKGROUND

On July 12, 2006, Island Title Corporation ("Plaintiff") filed a Complaint in the Circuit Court of Hawaii, Second Circuit, seeking to interplead $32,947.33 ("interpleader funds") in excess proceeds from the non-judicial foreclosure sale of certain real property once owned by Defendants Alan Katsuzo Kozuki and Nelly Kozuki. Island Title named as defendants a number of parties it perceived might claim an interest in the interpleader funds, including Barry W. Bundy, Michael Mulholland, Alan and Nelly Kozuki ("Kozuki Defendants"), the United States, the Department of Treasury of the United States, the Internal Revenue Service of the United States, the State of Hawaii, the Director of Taxation, State of Hawaii ("Hawaii DOT"), and the Department of Labor and Industrial Relations of the State of Hawaii ("Hawaii DLIR").

On August 17, 2006, the United States removed the instant interpleader action from Hawaii state court to this Court.

On August 29, 2006 the following parties' Answers to the Complaint and Affirmative Statements of a Claim to the interpleader funds were transmitted to this Court: Defendants Bundy and Mulholland, Defendant Hawaii Department of Labor and Industrial Relations, and Defendant Director of Taxation, State of Hawaii. On September 19, 2006, Defendant United States filed its Answer to the Complaint.

Upon application by Island Title, the Clerk of the Court entered default against the Kozuki Defendants on September 5, 2006.

On February 12, 2007, Defendant United States of America filed a Motion for Summary Judgment ("U.S.Motion") and a Concise Statement of Facts ("U.S.CSF") requesting distribution of the full amount of the interpled funds remaining after the initial distribution to Hawaii DOT. Defendant United States also argues that its share of the interpleader funds cannot be diminished by the award of attorney's fees and costs to Plaintiff.

On February 13, 2007, Plaintiff Island Title filed a Motion for Summary Judgment ("Island Title Motion") and a Concise Statement of Facts ("Island Title CSF") asking the Court to:

1. Direct Island Title to deposit the interpleader funds into the Registry of the Court;

2. Award Island Title reasonable attorneys' fees and costs to be charged against the interpleader funds;

3. Enjoin Defendants from presenting any suit against Island Title in regard to the interpleader funds;

4. Order the Defendants to interplead their respective claims;

5. Grant Island Title further relief as the Court deems proper.

Defendant Hawaii DOT also filed a Motion for Summary Judgment ("Hawaii

DOT Motion") and a Concise Statement of Facts ("Hawaii DOT CSF") on February 13, 2007, arguing that its claim to the funds has priority over both Defendant United States' claim and to Plaintiff Island Title's request for attorney's fees and costs.

On February 21, 2007, Hawaii DLIR filed a statement of no opposition to Defendant Hawaii DOT's Motion for Summary Judgment. On March 14, 2007, Hawaii DLIR filed a statement of no opposition to Defendant United States' Motion for Summary Judgment. The same day, Hawaii DLIR filed a statement of no position on Plaintiff Island Title's Motion for Summary Judgment.

On March 20, 2007, the United States filed an Opposition ("U.S.A.Opp.") to Plaintiff Island Title's Motion and a Concise Statement in Opposition ("U.S.A.Opp.CSF"). The same day, Defendant Hawaii DOT filed a statement of position to Plaintiff Island Title's Motion. Defendant Hawaii DOT also filed a statement of no opposition to Defendant United States' Motion for Summary Judgment.

On March 22, 2007, Plaintiff Island Title filed an Opposition to both Defendants United States' and Hawaii DOT's Motions for Summary Judgment ("Island Title Opp.").

On March 29, 2007, Plaintiff Island Title filed a Reply to Defendant United States' Opposition to Plaintiff's Motion for Summary Judgment.

The hearing on Defendant United States' Motion for Summary Judgment, Defendant Hawaii DOT's Motion for Summary Judgment, and Plaintiff Island Title's Motion for Summary Judgment was held on Monday, April 9, 2007 at 2:30 p.m.

### FACTUAL BACKGROUND [1]

The parties do not dispute the facts that gave rise to the interpleader funds. Alan and Nelly Kozuki defaulted on a second mortgage held by First Hawaiian Bank that was secured by real property located at 828 Aukai Place, Wailuku, Hawaii 96743. *See* U.S. Exh. "A", Hulbig Decl. at A000004, ¶ 3; Island Title Exh. "A". After mailing a Notice of Intent to Foreclose Under Power of Sale to the Kozuki Defendants and all other parties known to have liens or interests in the property, on May 23, 2003, First Hawaiian Bank conducted a non-judicial foreclosure sale of the property to satisfy the amount owing on its second mortgage interest. *See* U.S. Exh. "A", Hulbig Decl. at A000004, ¶ 3(*o*); A000013.

At the non-judicial foreclosure sale, the property was sold to Defendant Barry W. Bundy for $120,000. *See* U.S. Exh. "A" to Hulbig Decl.; Island Title Exh. "B." The transaction for the purchase of the sale of the property closed on November 5, 2003, and title was transferred by quitclaim deed to Defendant Bundy, Defendant Michael R. Mulholland, and Mulholland's wife. *See* U.S. Exhs. "B", "D" to Hulbig Decl., at A000146; Island Title Exh. "D". Island Title served as the escrow and settlement agent for the closing. *See* Complaint at ¶ 18; Island Title, Kim Decl. at ¶ 2.

The excess sale proceeds after paying off First Hawaiian Bank's second mortgage interest totals $32,947.33, which is currently held in escrow by Island Title. *See* U.S. Exh. "D" to Hulbig Decl. at A 000193; Island Title, Kim Decl. at ¶ 3. These excess sale proceeds are the interpleader funds at issue in this case.

1. The facts as recited in this Order are for the purpose of disposing of this motion and are not to be construed as findings of fact that the parties may rely on in future proceedings in this case.

In their answers to the Complaint, Defendants Bundy, Mullholland, the United States, the Department of Labor Industrial Relations of the State of Hawaii, the Department of Taxation of the State of Hawaii, and Island Title all made claims to the interpleader funds.

Defendants Bundy and Mulholland alleged in their Answer that they have a claim to the entirety of the sums sought to be interpled, but did not state a basis for their claim. *See* Bundy & Mullholland Answer at ¶ 4. Bundy and Mullholland did not respond to the United States' written discovery requests, including a request for an admission that they "have no legal or equitable interest in the Interpleader Funds." *See* U.S. Hulbig Decl. at ¶ 2, Exh. "K" to Hulbig Decl.

Defendant Hawaii Department of Taxation ("Hawaii DOT") seeks to apply the interpleader funds to Defendant Nelly Kozuki's outstanding state employment tax liabilities for the tax periods of August 1998 and September 1998. *See* U.S. Exh. "H" to Hulbig Decl.; Hawaii DOT, Hondo Aff. at ¶ 4a. On or around October 29, 1998, Hawaii DOT sent Defendant Nelly Kozuki a Statement of Taxes Due for the August and September, 1998 tax periods. *See* Hawaii DOT, Hondo Aff. at ¶ 4c, Exh. "A". On December 11, 1998, Hawaii DOT sent Defendant Nelly Kozuki a Final Collection Notice of the taxes owed for the August and September, 1998 tax periods. *Id.* at ¶ 4d, Exh. "B". As of April 9, 2007, the state tax lien for which Hawaii DOT seeks to apply the interpleader funds totals $9,501.90. *See* Hawaii DOT Reply at ¶ 7; Hawaii DOT CSF Hondo Aff. at ¶ 4e.

Defendant United States of America ("U.S.A.") seeks to apply the interpleader funds to outstanding federal employment tax liabilities of Defendant Nelly Kozuki for the tax periods ending September 30, 1998 and December 31, 1998. See U.S. CSF at ¶ 9. The IRS assessed taxes, penalties, and interest for the September, 1998 tax period on December 14, 1998 and for the December, 1998 period on April 19, 1999. *See* U.S. CSF at ¶ 9, Exhs. "F", "G" to Hulbig Decl. The U.S. recorded a federal tax lien with the Hawaii Bureau of Conveyances on October 15, 1999. *Id.* At the hearing, Defendant United States asserted that its tax lien on the interpleader funds totals approximately $75,000.[2]

Defendant Hawaii Department of Labor & Industrial Relations ("Hawaii DLIR") initially alleged its interest in the interpleader funds arising from Defendant Nelly Kozuki's outstanding state unemployment tax liabilities for the periods from April, 1999 to March, 2001. See Hawaii DLIR Answer, Exh. "A". Subsequently, Hawaii DLIR filed statements of no opposition to both Defendant Hawaii DOT"s Motion for Summary Judgment and Defendant United States' Motion for Summary Judgment. Hawaii DLIR also filed a statement of no position on Plaintiff Island Title's Motion for Summary Judgment.

Plaintiff Island Title seeks to recover its attorneys' fees and costs incurred in this matter from the interpleader funds. *See* Complaint at ¶ 22. As of December 2006, Plaitiff Island Title claims it had incurred $7,309.45 in attorneys' fees and costs. *See* Island Title CSF ¶ 9, Ching Decl., Exh. "E".

### *STANDARD OF REVIEW*

**I. *Summary Judgment***

The purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses. *See Celotex*

---

**2.** At the hearing, the Court ordered the United States to file a supplemental affidavit substantiating the total amount of the federal tax lien alleged in this matter.

*Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is therefore appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

"A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case. A 'genuine issue' of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Thrifty Oil Co. v. Bank of America National Trust & Savings Ass'n,* 322 F.3d 1039, 1046 (9th Cir.2003) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)) (internal citation omitted).[3] Conversely, where the evidence could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial. *See Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

 The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Miller v. Glenn Miller Productions,* 454 F.3d 975, 987 (9th Cir.2006). The moving party may do so with affirmative evidence or by "'showing'—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548.[4]

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Matsushita Elec.,* 475 U.S. at 586, 106 S.Ct. 1348; *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987).[5] The nonmoving party must instead set forth "significant probative evidence" in support of its position. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987). Summary judgment will thus be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

When evaluating a motion for summary judgment, the court must construe all evidence and reasonable inferences drawn therefrom in the light most favorable to

---

3. Disputes as to immaterial issues of fact do "not preclude summary judgment." *Lynn v. Sheet Metal Workers' International Ass'n,* 804 F.2d 1472, 1483 (9th Cir.1986).

4. When the moving party bears the burden of proof at trial, that party must satisfy its burden with respect to the motion for summary judgment by coming forward with affirmative evidence that would entitle it to a directed verdict if the evidence were to go uncontroverted at trial. *Miller,* 454 F.3d at 987 (quoting *C.A.R. Transportation Brokerage Co. v. Darden Restaurants, Inc.,* 213 F.3d 474, 480

(9th Cir.2000)). When the nonmoving party bears the burden of proof at trial, the party moving for summary judgment may satisfy its burden with respect to the motion for summary judgment by pointing out to the court an absence of evidence from the nonmoving party. *Miller,* 454 F.3d at 987.

5. Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1061 (9th Cir. 2002); *see also T.W. Electrical Service,* 809 F.2d 626, 630 (9th Cir.1987).

the nonmoving party. See *T.W. Electrical Service*, 809 F.2d at 630–31.[6] Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## II. *Interpleader Actions*

■ Rule 22 interpleader "provides a process by which a party may join all other claimants as adverse parties when their claims are such that the stakeholder may be exposed to multiple liability." *Aetna Life Insurance Co. v. Bayona*, 223 F.3d 1030, 1033 (9th Cir.2000)(internal quotations omitted). The purpose of an interpleader action is "to decide the validity and priority of existing claims to a res." *Texaco, Inc. v. Ponsoldt*, 118 F.3d 1367, 1369 (9th Cir.1997). In an interpleader action, each claimant must establish his right to the property by a preponderance of the evidence. *See Midland Insurance Co. v. Friedgood*, 577 F.Supp. 1407, 1412 (D.C.N.Y.1984).

## DISCUSSION

### I. *Jurisdiction*

■ Plaintiff Island Title originally brought the instant action for interpleader in Hawaii state court under Hawaii Rules of Civil Procedure Rule 22. *See* Complaint at ¶ 1. The United States, as a Defendant identified by the Complaint, removed the action to this Court. Subject matter jurisdiction in interpleader actions brought under Rule 22 ("rule interpleader") must be based on the general jurisdiction statutes applicable to civil actions in federal court.[7]

7 Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1710 (3d ed.2001). In the instant case, the United States assets a claim to the interpleader funds to satisfy a federal tax lien. Federal question jurisdiction over this rule interpleader action exists because 28 U.S.C. § 2410 grants concurrent federal and state court jurisdiction to any interpleader action with respect to property on which the United States has a lien. § 2410(a)(5).

## II. *Priority of Defendants' Claims*

### A. Kozuki Defendants

On September 5, 2006, default was entered against Defendants Alan Katsuzo Kozuki and Nelly Kozuki, Co–Trustees under that certain unrecorded Kozuki Family Revocable Living Trust Agreement dated November 5, 1993. Pursuant to Rule 55 of the Federal Rules of Civil Procedure, default was entered for the Kozuki Defendants' failure to timely answer, plead, or otherwise defend the Interpleader Complaint by Island Title. The Kozuki Defendants have forfeited any claim to the interpleader funds.

### B. Defendants Bundy and Mulholland

On December 28, 2006, Defendant United States served Defendants Bundy and Mulholland, through their attorney, a set of requests for admission. See Def. U.S.A. Hulbig Decl. at ¶ 2; Def. Hawaii DOT Exhs. "F", "G". Among the requests for admission, Defendant United States asked Defendants Bundy and Mulholland to admit that they have "no legal or equitable

---

**6.** At the summary judgment stage, the court may not make credibility assessments or weigh conflicting evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Bator v. State of Hawai'i*, 39 F.3d 1021, 1026 (9th Cir.1994).

**7.** By contrast, subject matter jurisdiction for statutory interpleader cases brought under 28 U.S.C. § 1335 requires diversity of citizenship between at least two of the adverse claimants and an amount in controversy of at least $500. This case was not brought pursuant to 28 U.S.C. § 1335.

interest in the Interpleader Funds." *See* Def. Hawaii DOT Exhs. "F", "G". Defendant United States attests that Bundy and Mulholland have not responded to the request for admission and did not seek an extension of time to respond. *See* Def. U.S.A. Hulbig Decl. at ¶ 2.

Under Rule 36(a) of the Federal Rules of Civil Procedure, "the matter is admitted, unless, within 30 days after service of the request ... the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter." According to Rule 36(b), "Any matter deemed admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." Having received no motion to withdraw or amend the admission, and because Defendants Bundy and Mulholland did not appear at the hearing to assert any claim to the funds, the Court concludes that Defendants Bundy and Mulholland have no legal or equitable interest in the interpleader funds.

## C. Defendant Director of Taxation, State of Hawaii

■ Both Defendants Hawaii DOT and United States assert statutory tax liens on the interpleader funds. "[T]he priority of statutory liens is determined by the principle of 'the first in time is the first in right,' but the lien that is competing with the federal lien must be perfected." *In re Priest v. Progressive Savings & Loan Assn.*, 712 F.2d 1326, 1327–28 (9th Cir. 1983) (citing *United States v. City of New Britain*, 347 U.S. 81, 85–84, 74 S.Ct. 367, 98 L.Ed. 520 (1954)). A competing lien is perfected when it becomes choate, that is "when the identity of the lienor, the property subject to the lien, and the amount of

the lien are established." *New Britain*, 347 U.S. at 84, 74 S.Ct. 367. The Ninth Circuit has interpreted choateness as requiring the state to take administrative steps to establish the lien and perfect its interest. *In re Priest*, 712 F.2d at 1329.

■ Defendant Hawaii DOT argues, and Defendant United States concedes, that Hawaii DOT took the requisite administrative steps to perfect its tax lien against Nelly Kozuki prior to the United States' earliest tax assessment against Nelly Kozuki.[8] Hawaii Revised Statutes § 231–33 creates a tax lien in favor of the State for any unpaid state tax due upon all property and rights to property belonging to the person liable for the tax. § 231–33(b). On or around October 29, 1998, Defendant Hawaii DOT sent Nelly Kozuki a Statement of Taxes Due, which stated the amount of taxes owed, penalties, and interest for the August and September 1993 tax periods. *See* Hawaii DOT, Hondo Aff. ¶ 4c, Exh. "A". On December 11, 1998, Hawaii DOT sent Nelly Kozuki a Final Collection Notice of the taxes, penalties, and interest owed for the August and September 1998 tax periods. Under Haw. Rev.Stat. § 231–33 and *In re Priest*, a tax lien in favor of Hawaii DOT arose and was perfected on or before December 11, 1998, because the Statement of Taxes Due and Final Collection Notice were sufficient administrative steps to establish the choateness of its tax lien. The United States' earliest tax assessment against Nelly Kozuki occurred on December 14, 1998. *See* Def. U.S.A., Exh. "F" to Hulbig Decl. Thus, under the "first in time, first in right" rule, Hawaii DOT's lien on the interpleader funds is superior to any lien the United States may have on the same funds. Hawaii DOT is entitled to apply the interpleader funds to satisfy its tax

---

**8.** Defendant Hawaii DLIR and Plaintif Island Title also do not oppose the contention that Hawaii DOT has a tax lien on the interpleader

funds and that it is superior to the United States' lien.

liens against Nelly Kozuki for the August and September 1998 tax periods.

### D. Defendant United States of America

Defendant United States seeks to apply the interpleader funds to outstanding federal employment tax liabilities of Defendant Nelly Kozuki for the tax periods ending September 30, 1998 and December 31, 1998. 26 U.S.C. § 6321 imposes a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to the taxpayer for the amount owed in taxes, including interest, penalties, and other costs. 26 U.S.C. § 6322 says that the lien imposed under Section 6321 arises when the assessment is made and continues until the liability is satisfied or becomes unenforceable by reason of lapse of time.

Defendant United States, through the Internal Revenue Service, assessed taxes, penalties, and interest against Nelly Kozuki for outstanding taxes owed for the September 1998 tax period on December 14, 1998. *See* Def. U.S.A. Exh. "F" to Hulbig Decl. It recorded a Notice of Federal Tax Lien for the September 1998 tax period with the Hawaii Bureau of Conveyances on October 14, 1999. *See* Def. U.S.A. Exh. "G" to Hulbig Decl. The IRS assessed taxes, penalties, and interest against Nelly Kozuki for the December 1998 tax period on April 19, 1999. *See* Def. U.S.A. Exh. "F" to Hulbig Decl. It recorded a Notice of Federal Tax lien for the December 1998 tax period on October 14, 1999. *See* Def. U.S.A. Exh. "G" to Hulbig Decl. Defendant United States argues, and no other parties object, that the federal tax liens attach to the proceeds of sale of the real property once owned by the Kozuki Defendants. *See, e.g., Caldwell v. Loeb*, 742 F.Supp. 650, 652 (N.D.Ga.

1990) (holding, "the proceeds of a foreclosure sale have been recognized as a property interest against which a federal tax lien will attach").

The United States has established that it is entitled to the portion that remains of the interpleader funds after the distribution to Hawaii DOT for its superior lien interest.

### E. Defendant Hawaii Department of Labor and Industrial Relations

Defendant Hawaii DLIR filed statements of no opposition to Defendants Hawaii DOT and U.S.A.'s motions for summary judgment. In doing so, Hawaii DLIR does not oppose Defendants Hawaii DOT and United States' respective claims for first and second priority to the interpleader funds and presents no claim that it has a right to the interpleader funds superior to either Hawaii DOT or the United States. In addition, Hawaii DLIR filed a statement of no position to Plaintiff Island Title's Motion for Summary Judgment. Because distribution of Defendants Hawaii DOT and United States' claims will exhaust the interpleader funds, Hawaii DLIR will not receive any portion of the funds and is not responsible for any amount of the interpleader Plaintiff's attorney's fees or costs.

### III. *Interpleader Plaintiff's Motion for Summary Judgment*

#### A. Plaintiff's Request to Deposit Funds with the Court and Be Excused from Further Participation in the Action

 Plaintiff Island Title argues that it is entitled to the Rule 22 interpleader remedy such that Island Title would be allowed to deposit the interpleader funds with the Court and be excused from further participation in the case.[9] A stake-

---

**9.** Although Plaintiff Island Title originally filed its interpleader complaint in Hawaii

holder in a sum of money in an interpleader action is entitled to join all persons having claims to the money and require the defendants to interplead their claims when the plaintiff is or may be exposed to double or multiple liability. Fed.R.Civ.P. 22(1). *See also Cripps v. Life Insurance Co. of North America*, 980 F.2d 1261, 1265 (9th Cir.1992)("In an interpleader action, the 'stakeholder' of a sum of money sues all those who might have claim to the money, deposits the money with the district court, and lets the claimants litigate who is entitled to the money") (citation omitted). A "stakeholder" is the "person or entity who possesses a fund to which adverse claims are made, but who personally has no interest in the fund." *First Interstate Bank of Oregon v. United States*, 891 F.Supp. 543, 546 n. 5 (D.Or. 1995).

 Plaintiff Island Title is a disinterested stakeholder because, as the escrow company holding the foreclosure sale proceeds, it has no claim or interest in the funds. Island Title cannot disburse the funds without running the risk of multiple litigation because multiple Defendants assert competing claims to the interpleader funds.[10]

Furthermore, none of the Defendants with potential claims to the interpleader funds object to Island Title's request to deposit the funds with the Court and be excused from the action. Defendant United States "has no objection to Island Title's motion for summary judgment to the extent it seeks to deposit the Interpleader Funds with the Court, and to be released from further participation in the case." *See* U.S.A. Opp. at p. 2. Defendant Hawaii DOT only opposes Island Title's Motion to the extent it requests attorney's fees and costs to be charged from the interpleader funds. See Hawaii DOT Statement of Position at p. 2. Finally, Defendant Hawaii DLIR has stated that it has no position on Island Title's Motion for Summary Judgment. *See* Def. Hawaii DLIR No Position on Island Title Motion at p. 1.

Because Island Title meets the requirements for the interpleader remedy and because all Defendants who could assert claims for the interpleader funds do not object, the Court (1) directs Island Title to deposit the interpleader funds with the Clerk of the Court; and (2) excuses Island Title from further participation in any suit with regard to the interpleader funds.

### B. Plaintiff's Request for Attorney's Fees & Costs

 The remaining issue is whether Island Title may recover attorney's fees and costs from the interpleader funds. In an interpleader action, the court has dis-

---

state court under Rule 22 of the Hawaii Rule of Civil Procedure, in its Memorandum in Support of its Motion for Summary Judgment, Plaintiff argues that it is entitled to the interpleader remedy provided under Rule 22 of the Federal Rules of Civil Procedure. The language of Rule 22 of the Hawaii Rules is identical to the language of part (1) of Rule 22 in the Federal Rules. Federal Rule 22 governs this case.

10. The Court notes that the interpleader remedy requires the claimants to be adverse. However, it is settled that the claims need not be mutually exclusive to be considered adverse. *See State Farm Fire & Casualty Com-pany v. Tashire*, 386 U.S. 523, 532-33, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967). The policy aim in finding interpleader jurisdiction in a case where the claimants' claims are not mutually exclusive is to protect the stakeholder from multiple litigation rather than multiple liability and to protect the individual claimants from having their portions diminished or defeated by the others. 7 Wright, Miller, & Kane, *supra*, § 1705 at 556. Here, the fact that the Defendants with valid claims to the interpleader funds agree amongst themselves to the order of priority does not defeat the availability of the interpleader remedy for Plaintiff.

cretion to award attorney's fees and costs to the stakeholder when it is fair and equitable to do so. *See Gelfgren v. Republic National Life Insurance Co. et al.,* 680 F.2d 79, 81 (9th Cir.1982). *See also* Wright, Miller, & Kane, *supra,* at § 1719.

■■■ The Court's discretion to award attorney's fees and costs is limited, however, if the award operates to diminish a distribution of the fund to satisfy a federal tax lien. Consistent with other jurisdictions, the Ninth Circuit held that federal "governmental priority established under the tax lien statutes precludes an award of fees to the plaintiff stakeholder from an interpleader fund when such an award would deplete the fund prior to total satisfaction of the lien." *Abex Corp. v. Ski's Enterprises, Inc., et al.,* 748 F.2d 513, 517 (9th Cir.1984); *see also Millers Mutual Insurance Assn. of Illinois v. Wassall,* 738 F.2d 302, 304 (8th Cir.1984); *Chevron U.S.A. v. May Oilfield Services, Inc.,* 739 F.2d 498, 499 (10th Cir.1984); *Katsaris v. United States,* 684 F.2d 758, 763 (11th Cir.1982); *Campagna–Turano Bakery, Inc. v. United States,* 632 F.2d 39, 42–43 (7th Cir.1980); *Spinks v. Jones,* 499 F.2d 339 (5th Cir.1974); *United States v. State National Bank of Connecticut,* 421 F.2d 519, 521 (2d Cir.1970); *United States v. Wilson,* 333 F.2d 147, 149 (3d Cir.1964); *United States v. Chapman,* 281 F.2d 862, 870 (10th Cir.1960). The tax lien statutes that establish the governmental priority are sections 6321 and 6322 of the Internal Revenue Code. *Abex,* 748 F.2d at 517.

■■■ Here, Defendant United States has established that it has a tax lien against the portion of the interpleader funds that remains after distribution of Hawaii DOT's claim. The federal tax lien arises under Sections 6321 and 6322. Thus, applying *Abex,* Island Title cannot recover attorney's fees or costs from the portion of the interpleader funds encumbered by the United States' federal tax lien. Defendants Hawaii DOT and Hawaii DLIR and Plaintiff Island Title do not dispute this conclusion. The remaining issue is whether Plaintiff Island Title can recover attorney's fees and costs from Hawaii DOT's portion of the interpleader funds.

The *Abex* rule does not necessarily bar a court from awarding attorney's fees and costs from the portion of the funds allotted to a superior claim. At least one court has found that the existence of a federal tax lien on a portion of the funds did not shield superior claimants from being charged a pro rata share of the interpleader stakeholder's attorney's fees and costs. *See United States v. Chapman, et al.,* 281 F.2d 862, 871 (10th Cir.1960).

Defendant Hawaii DOT argues that Hawaii Revised Statutes § 231–33 establishes its priority over Island Title as the paramount lienholder upon the interpleader funds. Section 231–33 provides, in part, "From and after the time the lien arises it is a paramount lien upon the property and rights to property against all parties, whether their interest arose before or after that time, except as otherwise provided by this section." Defendant Hawaii DOT argues that this language grants the state's tax lien the same type of government priority as recognized for federal liens in *Abex,* and that the Court should extend the *Abex* rule to state tax liens. Defendant Hawaii DOT cites one case in which the New Hampshire District Court did just that. *See Hinkley & Donovan v. Paine, et al.,* 424 F.Supp. 1013, 1021 (D.N.H.1977)(extending to state tax liens the rule that a disinterested stakeholder is not entitled to attorney's fees when the amount is insufficient to satisfy a federal tax lien); *but see The Pilots Association for Bay and River Delaware v. United States Dep't of the Treasury et al.,* 1987 WL 18692, at *4 n. 1 (D.Del.1987)(rejecting

*Hinkley's* extension of the rule to state tax liens because *Hinkley* offered no authority or explanation and because state tax liens involve different policy concerns than do federal tax liens since the Federal Tax Lien act is not implicated).

] Broad consensus from case law establishes the federal tax lien exception to the rule that federal courts have the discretion to award attorney's fees to disinterested interpleader stakeholders. No such consensus exists to create a similar exception for state tax liens. Furthermore, as a general rule, federal law rather than state law governs the equitable power of the federal court to award attorney's fees to the interpleader stakeholder. *Palomas Land & Cattle Co. v. Baldwin*, 189 F.2d 936, 938 (9th Cir.1951)("In Federal courts, the allowance or disallowance of costs, including attorneys' fees, is governed by federal law, not by state law.")(citing Rule 54(d) of the Federal Rules of Civil Procedure). The Court finds Wright, Miller, and Kane's discussion on the matter instructive:

> [T]he passage in Rule 54(d) coupled with the historic power of federal equity courts to award attorney's fees to the stakeholder and the policy in favor of the interpleader remedy expressed in Rule 22 seem to support the conclusion that a uniform federal practice regarding this matter is desirable in cases of rule interpleader.

7 Wright, Miller, & Kane, *supra*, § 1719 at 695. Wright, Miller, & Kane also conclude that state law to the contrary would not be binding upon the federal courts, but the federal court may look to state law in its analysis: "Nor is state law binding with regard to ... the inherent equity powers of a federal court, particularly its ability to protect an innocent stakeholder and award the stakeholder costs and attorney's fees. In many of these situations, however, the court will be guided by state law." *Id.*

§ 1713 at 621–22. *See also Lincoln Income Life Insurance Co. v. Harrison*, 71 F.R.D. 27, 31–31 (W.D.Okla.1976)(declining to apply state law, which would prevent award of attorney's fees, because awarding attorney's fees in Rule 22 interpleader is within discretion of the federal court). Thus, the Court's equitable discretion to award attorney's fees to the interpleader stakeholder is not precluded by the statutory priority given by the state tax lien statute.

The Court has discretion to award attorney's fees to the interpleader plaintiff Island Title if it would be equitable and just to do so.

> The test for awarding fees and costs to a stakeholder in an interpleader action is a typical equitable one that is very similar to the standard used to determine whether interpleader relief ought to be granted-should the interpleading party be required to assume the risk of multiplicity of actions and erroneous election? If not, then the stakeholder should be made whole.

*John Hancock Mutual Life Insurance Co. v. Jordan*, 836 F.Supp. 743, 749 (D.Colo.1993)(citing Wright, Miller, & Kane, *supra*, § 1719 at 682, *United States ex rel. General Electric Co. v. Browne Electric Co.*, 168 F.Supp. 806, 808 (E.D.Va. 1959)). As discussed earlier, Plaintiff Island Title meets the standard for obtaining interpleader relief, so it would be inequitable to force Island Title to bear all the costs of bringing the action because it benefitted the Defendants by promoting resolution of the ownership of the fund and preventing dissipation or wrongful election.

The Ninth Circuit has noted that the award of attorney's fees to a disinterested stakeholder is typically modest and should be limited.

Because the interpleader plaintiff is supposed to be disinterested in the ultimate disposition of the fund, attorneys' fee awards are properly limited to those fees that are incurred in filing the action and pursuing the plan's release from liability, not in litigating the merits of the adverse claimants' positions. Compensable expenses include, for example, preparing the complaint, obtaining service of process on the claimants to the fund, and preparing an order discharging the plaintiff from liability and dismissing it from the action. Because the scope of compensable expenses is limited, attorney's fee awards to the 'disinterested' interpleader plaintiff are typically modest. Moreover, because attorneys' fees are paid from the interpleaded fund itself, there is an important policy interest in seeing that the fee award does not deplete the fund at the expense of the party who is ultimately deemed entitled to it.

*Trustees of the Director's Guild of America–Producer Pension Benefits Plans v. Tise,* 234 F.3d 415, 426–27 (9th Cir.2000) (citations omitted).

Here, it is established that the award cannot deplete the portion of the fund applied to the United States' federal tax lien. Defendant Hawaii DOT claims that it is entitled to $9,501.90 to satisfy the state tax lien. *See* Hawaii DOT CSF at ¶ 15; Hondo Aff. at ¶ 4e; Hawaii DOT Reply at ¶ 7. It would be inequitable to make Hawaii DOT bear the entirety of Island Title's claim for attorney's fees and costs, which as of December 2006 were $7,309.45.[11] *See* Memo in Support of Island Title's Motion at p. 6; Island Title CSF, Ching Decl. Exh "E". Plaintiff Island Title argues that it would be reasonable to award it the full amount of fees and costs incurred because earlier in the litigation,

Island Title offered to stipulate to a smaller amount of fees of $3,319.57. *See* Island Title CSF Exh. "F". Defendants had no obligation to agree to such a stipulation when it was unclear whether Defendants would or could be charged with Island Title's fees. As it turns out, the federal tax lien statutes prevent Island Title from recovering attorney's fees from the United States' portion of the interpleader funds. Furthermore, the award of fees is not a legal entitlement to the stakeholder, but is awarded in the Court's discretion if equity so demands.

The Court follows *Chapman* and concludes that the interests of equity would be served if the interpleader plaintiff received some of its attorney's fees and costs from Hawaii DOT's first priority claim. *Chapman,* 281 F.2d at 871. Island Title is entitled to reasonable attorney's fees and costs subject to the parameters set forth in *Tise,* 234 F.3d at 426–27.

The Court orders Island Title to submit a petition for attorney's fees and costs to the Magistrate Judge, supported by affidavits showing fees and costs and how they were accrued.

Hawaii DOT's obligation to pay Island Title's attorney's fees and costs should be limited so as not to defeat its rightful claim to the funds to satisfy its tax lien. Accordingly, the fees and costs recoverable by Island Title shall not exceed $3,000 considering the limited funds available to Hawaii DOT.

### CONCLUSION

For all the foregoing reasons, the Court

(1) GRANTS Defendant United States' Motion for Summary Judgment. The United States is entitled to the distribution of the funds remaining after Hawaii DOT's

---

11. In its Memorandum in Support if its Motion, Island contends it will have incurred additional fees in connection with this motion.

superior tax lien, and such distribution to the United States may not be diminished to pay for Plaintiff Island Title's attorney's fees and costs.

(2) GRANTS IN PART and DENIES IN PART Defendant Director, Department of Taxation, State of Hawaii's Motion for Summary Judgment. Hawaii DOT is entitled to the first distribution from the interpleader funds to satisfy its state tax lien upon the funds. Plaintiff Island Title's allowable attorney's fees and costs shall be charged against Hawaii DOT's distribution from the interpleader funds.

(3) GRANTS IN PART and DENIES IN PART Plaintiff Island Title Corporation's Motion for Summary Judgment. Island Title may deposit the interpleader funds with the Clerk of the Court and be dismissed from further proceedings in this case. Island Title is ordered to submit a petition for attorney's fees and costs to the Magistrate Judge, supported by affidavits. The award shall be distributed only from Hawaii's DOT's portion of the funds and shall not exceed $ 3000.

IT IS SO ORDERED.